BRAGG *vs.* MASSIE'S ADM'R.

[DETINUE FOR SLAVES.]

1. *Husband's marital rights in and to wife's personalty.*—Prior to the passage of the laws securing to married women their separate estates, the husband's marital rights attached to a slave given to his wife, while unmarried, by her father, unless the terms of the gift secured the property to the separate use of the daughter; and on a subsequent exchange of the slave for another, during the coverture, by and with the assent of the husband, his marital rights equally attached to the slave obtained by the exchange.

2. *Adverse possession between father and daughter living together.*—The possession of a slave by a daughter, under a gift from her father, cannot be considered adverse to the father, or to the estate of her deceased husband, of which her father is the personal representative, when it appears that she is living with her father, that each of them exercises acts of control over the slave, and that the marital rights of her husband attached to the slave during coverture : the possession of father and daughter being joint in such case, and the title being in the father, the possession will also be referred to him.

3. *Private sale by administrator.*—A private sale by an administrator, in his individual capacity, of a slave belonging to his intestate's estate, estops the administrator from afterwards recovering the slave, but does not divest the title of the estate; and if the sale is perfected by delivery, and the administrator afterwards acquires the possession under a new contract with the purchaser, he is estopped from setting up against the latter the illegality of the original sale; consequently a recovery against him by the purchaser, in an action founded on the subsequent contract, does not bar the title of the estate.

4. *Admissibility of parol to change absolute deed into mortgage.*—Parol evidence is not admissible at law, to show that a deed, absolute on its face, was intended to operate only as a mortgage.

5. *Admissibility of grantor's declarations and acts as affecting gift.*—Where two slaves are given by a father to his two unmarried daughters, by separate gifts made at one and the same time, his declarations at the time, showing a delivery of both slaves, are competent evidence as a

part of the *res gestœ*, in a controversy respecting one of the gifts; and the subsequent acts of both grantor and grantee, showing an assertion of title to the slave by the latter, and the recognition of her title by the former, are also admissible evidence.

APPEAL from the Circuit Court of Greene.
Tried before the Hon. WM. S. MUDD.

THIS action was brought by A. R. Davis, as the administrator *de bonis non* of C. C. A. Massie, deceased, against David Bragg, to recover several slaves, together with damages for their detention; and was commenced on the 31st August, 1858. The defendant pleaded "the general issue, in short by consent, with leave to give any special matter in evidence;" and issue was joined on that plea. The material facts of the case, showing the respective titles of the parties, briefly stated, are these: The plaintiff's intestate, in December, 1836, married Ann Eliza Bragg, a daughter of William Bragg, and died in August, 1837. Prior to said marriage, William Bragg had given to his daughter a negro girl named Amy; and after the marriage the girl Amy was exchanged, by agreement between Bragg and his daughter, with the consent and approbation of Massie, for another girl, named Catherine, who, together with her children since born, is sued for in this action. After the death of her husband, Mrs. Massie returned to her father's house, where she continued to reside until 1843, when she married one Ray; and after the lapse of about a year, she again went back to her father's. William Bragg took out letters of administration on the estate of Massie, on the 19th November, 1838; returned an inventory of the property belonging to the estate, in which he included neither Amy nor Catherine, because, as he testified, he thought that Catherine belonged to Mrs. Massie; and resigned the administration on the 28th August, 1858,—the plaintiff being appointed administrator *de bonis non* on the 30th August, 1858. On the 10th June, 1841, while the slave Catherine was in the possession of William Bragg, and while Mrs. Massie was living with him, said Bragg executed

a deed, by which he conveyed said slave, other slaves then in his possession, the plantation on which he resided, and other property, to David Bragg and Wm. H. Knott,—the latter having previously married one of his daughters; and delivered said plantation and slaves to the grantees. This deed was absolute on its face; but the grantor testified, that it was only intended to secure the grantees against their liability as sureties for him, on a debt on which judgment had been recovered against him and them, and which had been taken to the supreme court by appeal; "and the understanding between him and said grantees was, that on his return from Virginia, whither he was about starting for the benefit of his wife's health, said grantees were to hold his property for him, and help him to work out and pay his debts, when the property conveyed was to be his; but it was understood, also, that said grantees, if he never returned, were to pay all his debts, and divide the balance of his property among his children; and it was understood, also, that the girl Catherine belonged to Mrs. Massie, and that said grantees were to return her whenever Mrs. Massie called for her." Mrs. Massie was not present when this deed was executed, and had no knowledge of it; and when she afterwards expressed some dissatisfaction with it, "the defendant told her", as William Bragg testified, "not to be uneasy, as she should have her property." The case in which the defendant and Knott were sureties for William Bragg having been taken to the supreme court by appeal, and there decided against William Bragg, an execution on the judgment was levied on the slaves now in controversy, with other slaves conveyed by the deed. The slaves were sold under the execution on the 7th March, 1842, and were bought in at the sale by one Shelton, who, on the same day, conveyed them by bill of sale to said defendant and Knott. The slaves were sent back to the plantation of William Bragg, where he and said Knott both resided; and they were divided, in 1847 or 1848, between the defendant and said Knott. William Bragg was not present at the division, but he received from Knott the

slaves which were allotted to the defendant, and retained the possession of them until some time in 1856, when they were recovered from him, in an action of detinue, by the defendant, who had possession of them when this suit was commenced.

On the trial, as appears from the bill of exceptions, the plaintiff introduced William Bragg as a witness, who testified, that his daughter Ann Eliza was seventeen or eighteen years old when she married Massie; that he bought the girl Amy for her, in 1834, from a negro-trader, whose camp was near his house, and, at the same time, bought another girl for his daughter Elmira, who was then unmarried, but afterwards married William H. Knott; that his daughters went to the camp, and each picked out for herself a negro girl, whom he bought for them after they had gone back home. "The defendant here objected to the witness stating anything in relation to any gift to his daughter Elmira, or anything that took place between him and his daughter Elmira, in relation to any negro bought for her, or given to her; but the court overruled the objection, and permitted the witness to state all that took place at the time, as well in reference to the alleged gift to Elmira, as to the alleged gift to Ann Eliza; to which ruling of the court the defendant excepted. The witness thereupon testified, that the two negro girls were sent to his house, and, when near the house, his two daughters being present, he pointed out Amy to Ann Eliza, and said to her, 'There's your negro', and pointed out the other to Elmira, and said to her, 'There's your negro'; to which statement of the witness, so far as it related to the alleged gift to Elmira, the defendant objected, and reserved an exception to the overruling of his objection."

"Said witness further testified, that both of his said daughters continued to reside at his house, and occupied the same room, until Elmira was married to W. H. Knott; that each exercised authority over the negro girl given to her as above stated, as her own, and told her to do anything she wanted done; but he (witness) ruled the house-

hold, his daughters, slaves, and all.  The plaintiff asked said witness, 'whose property he called Amy', and 'if he set up any claim or title to the girl Amy after the time of said alleged gift'; to which the witness answered, 'that he called her Ann Eliza's', and 'that he did not set up any claim or title to her.'  The defendant objected to each of these questions, and to the answers to them, and excepted to the overruling of his objections.  The plaintiff also asked said witness, 'whether Ann Eliza claimed the girl Amy, in his presence, [prior] to her marriage, and in what way she claimed her'; to which the witness replied, 'Yes, by doing what she wanted with her, and by saying the girl was her own'.  The defendant objected to this question and answer separately, and excepted to the overruling of his objections by the court.  The plaintiff then asked said witness, 'Did you, or not, when she claimed said negro in your presence, ever dispute it'?  to which the witness answered, 'that he never did.'  To this question and answer, also, objections were interposed by the defendant, and exceptions reserved to the overruling of his objections."

Bragg further testified, on cross-examination, that Amy was only five or six years old when he bought her and gave her to his daughter Ann Eliza; "that she was too small to do anything, and just knocked about the house and yard like any of the other little negroes, and did anything that any of the family told her to do"; that his daughter claimed her, "but he was unable to state any particular time or times when she did so, or any particular thing that she said or did in that respect"; also, that after the exchange of Amy for Catherine, as above stated, and after Massie's death, Mrs. Massie had possession of Catherine, at his house, until the slave was recovered from him in the action of detinue by the defendant; that she had possession at the time he conveyed the slave to the defendant and Knott; that Mrs. Massie was not present when the deed was made, and knew nothing about it; that he made the deed "because he thought there would be some trouble, and no consideration was paid for it"; that he always paid taxes on

both Amy and Catherine, and that the money paid to Shelton for the slaves, on his purchase of them at the sheriff's sale, was a part of the proceeds of the crops raised by him on the plantation conveyed to the defendant and Knott.

The court charged the jury, at the request of plaintiff:

"1. That, if they believed, from the evidence, that William Bragg gave the girl Amy to his daughter Ann Eliza; and that Ann Eliza afterwards, in 1837, married said Massie; and that said Bragg, after said marriage, and during the life-time of said Massie, exchanged the girl Amy for Catherine; and that said Massie recognized the trade, and made no objection to it,—then the title to Catherine vested in said Massie; and that if said Bragg, in 1841, while he was the administrator of said Massie, sold the said girl to the defendant and Knott, without any order of court, or authority by will, such sale did not divest the right and title of said Massie's estate.

"2. That although they might believe, from the evidence, that said slave was in the possession of Mrs. Massie, and claimed by her as her own property, when the sale was made by William Bragg to the defendant and Knott, in 1841; yet, if they further believe that said Bragg was then the administrator of Massie; and that he sold said slave without authority of law, and placed her in the possession of the defendant and said Knott, and that she remained in their possession, and under their control, until the sale by the sheriff in 1842, the said sale did not divest the title of Massie's estate, if he had reduced said slave into his possession during his life-time.

"3. That, although delivery is necessary to perfect a parol gift of a slave, yet it is not necessary that the actual possession should be retained by the donee; that the subsequent possession by the father is not necessarily incompatible with the donee's right to the slave, nor is it conclusive evidence that there was no delivery, or that the property did not pass to the donee, his daughter; and that where the donee is the daughter, and lives with the donor as a member of his family, and the slave is too young to be

Bragg v. Massie's Adm'r.

a source of profit, or to do active service, these facts are, *prima facie*, sufficient to explain the donor's subsequent possession.

"4. That when a gift has been once made, by a father to his child, the father cannot, of his own accord, deprive the child of it: being once a gift, it is always a gift, and the father cannot again become the owner of it without the consent of the child.

"5. That by, the common law, marriage vests in the husband all the wife's personal property in possession at the time of the marriage, or that she may acquire and reduce to possession during the coverture; and that if personal property is given or sold to the wife during the coverture, prior to the 1st March, 1848, without any words creating a separate estate, and passes into the possession of the husband, then his marital rights attach, and the title vests in him; and that if it once passes into his possession, and the title vests in him as husband, and he dies, the title to it devolves upon his administrator, although his wife may claim it as hers.

"6. If the jury believe, from the evidence, that the girl Catherine was, in law, the property of Massie at the time of his death, in 1837; and that William Bragg, in 1841, while he was the administrator of Massie's estate, sold and conveyed said slave to the defendant and Knott; and that afterwards, in 1847 or 1848, a division of the property so conveyed to them was made between Knott and the defendant; and that the girl Catherine, with others, was then allotted to the defendant; and that he sent her, or permitted her to go, to the house or premises of William Bragg; and that Bragg held her as the bailee of the defendant; then, the subsequent judgment and recovery by the defendant against William Bragg, in 1856, would constitute no bar to any right of the plaintiff, as administrator *de bonis non*, to recover the property sued for in this action.

"7. If the jury believe, from the evidence, that the girl Catherine was the property of Massie at the time of his death, in 1837; and that William Bragg was appointed

and qualified as his administrator in 1838, and, in 1841, while he was such administrator, bargained, sold, and conveyed her by deed, to the defendant and Knott; and that said Bragg continued to be the administrator of said Massie's estate until August, 1858; then, neither the deed and conveyance by said Bragg in 1841, nor the judgment recovered by the defendant against said Bragg in 1856, nor the sale by the sheriff in 1842, nor any subsequent division of the slaves between the said Bragg and the defendant, or between them and Knott, affect or divest the plaintiff's title as administrator *de bonis non* of said Massie, or constitute a bar to his right to recover in this case.

"8. If the jury believe, from the evidence, that William Bragg was the administrator of said Massie in 1841, and, whilst he was such administrator, sold and conveyed the girl Catherine, by the deed which was in evidence, to the defendant and Knott; and that when said Bragg and his daughter, a few days afterwards, went to Virginia, the girl Catherine and the other slaves were taken into the possession and control of Knott, for Bragg and himself; and that they afterwards, in 1842, delivered the girl Catherine to the sheriff, to be sold by him as their property; and that Shelton bought said girl at the sale for them, and they took from him a bill of sale for her; and that she was taken back into the possession of said Knott and Bragg, or either of them; and that afterwards, in 1848, said Knott and Bragg divided the slaves between themselves; and that the girl Catherine, with others allotted to David Bragg on said division, was placed by him, or permitted to go, into the possession of William Bragg; then, said William Bragg could not defend or defeat any action by said defendant for said negroes, and the plaintiff in this action, as the administrator *de bonis non* of said Massie, is not barred of his right of action, either by any record of a former recovery offered in evidence, or by the lapse of time, or by the statute of limitations.

"9. If the jury believe, from the evidence, that the defendant and Knott, or either of them, took possession of

the slaves conveyed to them by William Bragg, under said deed, in 1841, then the said sale and conveyance was not the sale of a chose in action; or, if they believe that the negroes conveyed by said deed were left on the premises by said William Bragg and his daughter, when they went to Virginia in 1841, under the control of said Knott and the defendant, or either of them ; and that they, or either of them, continued in possession of said slaves until they were sold by the sheriff in March, 1842 ; then, the sale and conveyance by said deed in 1841 was not the sale of a chose in action, nor is the plaintiff, as administrator *de bonis non* of said Massie, thereby barred of his right of action in this case.

"10. If the jury believe, from the evidence, that William Bragg, in 1856, when David Bragg sued him in detinue for the slaves now in controversy, was holding said slaves as the bailee of David Bragg, or by his permission, then the said William Bragg could not defend or defeat that action, by showing that said sale and conveyance by himself to David Bragg and Knott was illegal and unauthorized ; and the judgment and recovery in that action is no bar to the plaintiff's right of action in this case ; and that the jury may look to all the facts and circumstances in the case, to determine whether or not said William Bragg was then holding said negroes as the bailee of David Bragg, or by his permission.

"11. If the jury believe, from the evidence, that said William Bragg, in 1834, bought the girl Amy and another, and brought or sent them to his house, and then and there called up his two daughters, and said to Ann Eliza, 'That's your negro,' pointing to Amy, or calling her by name, and to Elmira, 'That's yours,' pointing to the other ; and that from and after that time, and until her marriage with Massie, Ann Eliza always claimed Amy as her property, in the presence of William Bragg ; and that he never disputed her claim to Amy ; and that afterwards, in 1837, before the death of said Massie, William Bragg bought the girl Catherine, and exchanged her for Amy ; and that Catherine,

went into the possession of Massie and wife, and remained in their possession until the death of Massie, and nursed his infant child after his death,—these are all circumstances to which the jury may look, in order to determine whether or not there was an actual delivery of said slave."

The defendant excepted to each of these charges, and then requested the court to give the following :—

" 1. If the jury believe, from the evidence, that Mrs. Massie, after the death of her husband, and at the time William Bragg was appointed administrator of said Massie's estate, held the slave Catherine as her own, claiming her as her own property ; and that she, and those holding, for her, continued to hold the slave for six years ; and that William Bragg knew that she and those holding for her did so hold and claim said slave, and never took or had possession of said property as administrator of said Massie, nor set up any claim to her as such administrator ; then, his title as administrator, and the title of the estate which he represented, to said slave, was barred after the expiration of six years from the time of his appointment as such administrator, and the plaintiff cannot recover in this suit.

" 2. If the jury believe, from the evidence, that after William Bragg's appointment as administrator of Massie's estate, and while he was such administrator, the slave Catherine was in the possession of Mrs. Massie, who held and claimed said slave at the time William Bragg executed the conveyance to David Bragg and Knott ; and that six years had elapsed, from the time of such holding by Mrs. Massie, to the commencement of this suit;—the plaintiff cannot recover, notwithstanding the sale by William Bragg to the defendant and Knott and their subsequent possession of the slave.

" 3. If the jury believe, from the evidence, that the slave Catherine, at the time of the sale by William Bragg to the defendant and Knott, was in the possession of Mrs. Massie, and was held and claimed by her as her own property ; and that this was known to the said William Bragg, who was then the administrator of said Massie; and that

the defendant and Knott did not know that said slave was the property of said estate,—such sale and conveyance passed the title to said slave to the defendant and Knott, and the plaintiff cannot recover in this action, although the title to said slave was in Massie's estate at the time of said sale.

"4. If the jury believe, from the evidence, that said William Bragg was the administrator of Massie's estate at the time he sold the slave to the defendant and Knott; and that said girl was then in the possession of Mrs. Massie, who was claiming her *bona fide* as her own; and that this was known to William Bragg,—then said Bragg, as such administrator, only had a right of action in said slave, which he could sell; and the sale and conveyance of the slave by him to the defendant and Knott passed the title to them, as between him and them; and the plaintiff cannot recover in this suit, unless the jury believe, from the evidence, that the defendant and Knott colluded with William Bragg to commit a fraud on the estate of Massie, or participated with him in the commission of a *devastavit* of said estate.

"5. If the jury believe, from the evidence, that said William Bragg was the administrator of Massie's estate at the time he sold and conveyed the girl Catherine to the defendant and Knott; and that said girl was then in the possession of Mrs. Massie, who was claiming her *bona fide* as her own; and that this was known to said William Bragg; then, said Bragg, as such administrator, had a right of action, which he could sell; that the sale and conveyance by him to the defendant and Knott passed the title to the slave Catherine to them, as between him and them and the plaintiff in this action; and that the plaintiff cannot recover in this suit, if the defendant and Knott were ignorant of the fact that the title to the slave was in Massie's estate.

"6. If the jury believe, from the evidence, that Mrs. Massie had the adverse possession of the slave Catherine at the time of the sale by William Bragg to the defendant and Knott, and that this was known to said William Bragg,

such sale and conveyance, although void as to Mrs. Massie, was good as between William Bragg and the defendant; and that the plaintiff cannot recover in this action, unless such sale was a contrivance between the defendant and William Bragg, to enable the latter to commit a *devastavit* on the estate of Massie, and a collusion between them to commit a fraud on said estate.

"7. If the jury believe, from the evidence, that the girl Catherine, and the others sued for in this action, are the same slaves that were sued for and recovered by the defendant, in the action of detinue brought by him against William Bragg; and that the said William Bragg, at the commencement of that action and the rendition of said judgment, was the administrator of said Massie's estate; and that the plaintiff in this action has no other or different title to said slaves, than such as was at that time in the estate of said Massie, or in his representative, he cannot recover in this action.

"8. If the jury believe, from the evidence, that the conveyance by William Bragg to David Bragg and Knott was intended by the parties to be or operate as a mortgage, to secure said David Bragg and Knott, or as a conditional sale, to be void, and the slaves to be restored to William Bragg, upon his paying or refunding to David Bragg and Knott the money which they paid as sureties for him; and that William Bragg has paid or refunded said money; and that David Bragg continued in the possession of said Catherine, claiming her as his own property, for more than six years from the time of such payment, to the commencement of this suit; and that this was known to William Bragg, who was, at the time of such payment, the administrator of Massie's estate,—the plaintiff cannot recover.

"9. If the jury believe, from the evidence, that the conveyance by William Bragg to David Bragg and Knott (?) as the sureties of William Bragg, or as a conditional sale, to be void, and the negroes to be restored to William Bragg, upon his paying or refunding to David Bragg and Knott the money which they should pay as sureties for him; and

that all the money paid or advanced by them was paid or refunded to them before the year 1848; and that the negroes allotted to David Bragg, on the division between him and Knott of the slaves so conveyed to them, went into the possession of William Bragg in 1848, and were held by him, either as his own property, or as the property of Mrs. Massie, from that time until the commencement of said detinue suit against him by David Bragg; and that the slaves sued for in this action are part of the same slaves sued for in that action; and that the said William Bragg, at the time of the commencement of that action and the rendition of judgment therein, was the administrator of said Massie's estate; and that the plaintiff in this action has no other or different title to the slaves sued for, than such as was at that time in the estate of Massie, or in his representative,—the plaintiff cannot recover."

The court refused each one of these charges, and the defendant excepted to their refusal; and he now assigns as error the several charges given, the refusal of the several charges asked, and the rulings of the court on the evidence to which, as above stated, he reserved exceptions.

S. F. HALE, and THOS. H. HERNDON, for appellant.
WM. P. WEBB, with BROOKS & GARROTT, *contra*.

STONE, J.—In the questions which are pressed upon our consideration, no contest is raised as to the validity of the gift, by William Bragg to his daughter, Mrs. Massie, of the slave Amy; nor of the subsequent exchange of the slave Catherine for Amy. The jury, by their verdict, impliedly affirmed that such gift was made and perfected; and the questions bearing on the merits of this case, which we are called upon to decide, all rest on the postulate that the gift was completely consummated. On any other hypothesis, the plaintiff's intestate never had title, and the present suit would have failed on that ground; while, on the other hand, the defendant's title would be unquestioned, both by his purchase from William Bragg, and by

his recovery of the identical property in controversy in this suit, in an action of detinue brought by him against William Bragg. Hence, in considering the questions raised by the charges given and refused, we will regard it as conceded that, at the time of the intermarriage of Ann Eliza with Mr. Massie, she was the owner of the slave Amy, and that subsequently, during the time of her coverture, she, with the approbation of her husband, exchanged Amy for the girl Catherine.

The uncontroverted, leading facts of this case, then, are the following : Ann Eliza Bragg was the owner of the slave Amy, and lived with her father, William Bragg, where the slave also lived. She intermarried with Mr. Massie, plaintiff's intestate, with whom she lived, also at the house of her father, until the death of her husband, which took place only a few months after the marriage. During the life-time of Mr. Massie, Mrs. Massie, in his presence, and with his approbation, exchanged with her father the slave Amy for the slave Catherine. Mr. Massie died in the summer or fall of 1837, intestate. William Bragg was appointed administrator of the estate of Mr. Massie, in November, 1838, and returned an inventory of his effects, omitting all mention of the slave Catherine. William Bragg continued administrator of the estate of Mr. Massie, until August, 1858, when he resigned, and Mr. Davis, the present plaintiff, was appointed administrator de bonis non. Mrs. Massie continued to live with her father, William Bragg, except for about one year, which was after her second marriage in 1844. In 1841, between two and three years after he was appointed administrator of Mr. Massie, William Bragg, by private contract, and in his own right, conveyed his property, including the slave Catherine, by deed absolute on its face, to David Bragg and William H. Knott, who thereupon took possession and control of the property, and worked it until about the year 1848; William Bragg and his daughter, Mrs. Massie, returning to the place some few months after the sale, and living upon it with Mr. Knott, who was son-in-law to William Bragg.

In 1842, Catherine was sold at sheriff's sale, as the property of David Bragg and Knott, to satisfy an execution which was the proper debt of William Bragg; was bought in for the benefit of David Bragg and Knott, and returned to the plantation from which she had been taken, namely, the plantation conveyed by William Bragg to David Bragg and Knott. About the year 1848, David Bragg and Knott made a division of the slaves which had been conveyed to them by William Bragg, and the slave Catherine was allotted to David Bragg. Immediately after this division, David Bragg sent the slaves which had been allotted to him, to the place occupied by William Bragg, and they continued with him until 1856, when David Bragg recovered them from him in an action of detinue. There was some proof tending to show that the deed from William Bragg to David Bragg, though absolute on its face, was intended and understood as only a mortgage security. There was proof, also, tending to show that William Bragg conveyed the slave Catherine as above stated, in ignorance of any claim which the estate of Mr. Massie had to him; believing at the time that she was the property of Mrs. Massie. There was some proof, also, tending to show that Mrs. Massie, when informed that Catherine had been deeded away, was dissatisfied; and that David Bragg informed her that Catherine should go back to her.

[1.] We may state, further, that we do not understand the counsel as controverting the proposition, that when Ann Eliza intermarried with Mr. Massie, the slave Amy became his property; and that when the exchange of slaves was made, the slave Catherine also became his property. In fact, these seem to be self-evident propositions, there being no evidence in this record that Mr. Massie renounced his marital rights.—*Machen v. Machen*, 15 Ala. 373; *Thrasher v. Ingram*, 32 Ala. 645; *Machen v. Machen*, 28 Ala. 374; *Bell's Adm'r v. Bell*, 37 Ala. 536.

Waiving then, for the present, all question of the consummation of the gift, we will address ourselves to certain points which have been pressed upon our attention as

ALABAMA.

grounds of reversal in this case. The appellant makes the following points:

1. That Mrs. Massie held the slave Catherine adversely to her father, the representative of her husband's estate; that the interest of the estate in the slave Catherine was, therefore, a mere chose in action, which the administrator had a right to sell at private sale; and that such private sale vested the title in David Bragg and William Knott, the purchasers.

2. That Mrs. Massie held the slave adversely to her father; that she, and those holding under her, have had the uninterrupted adverse possession for more than six years after William Bragg was appointed administrator; and that, on this account, the claim of the estate is barred.

3. That, conceding the private sale by William Bragg to David Bragg and Mr. Knott to have been illegal, (that being the only theory on which this suit is maintainable,) the sale, under our law, was simply void; that being void, when the action of detinue was brought by David Bragg against William Bragg, the latter was not estopped by his sale from resting his defense on the invalidity of the contract; that William Bragg could and should have defended his possession on the title of his intestate, and that the recovery in that action is conclusive against the title of Mr. Massie's estate.

4. That the deed from William Bragg to David Bragg and Mr. Knott was only a mortgage to secure the payment of a debt; that the debt had been extinguished; and therefore, William Bragg, by suffering the former recovery, estopped the estate from recovering the property.

[2.] In this case, there is no evidence that Mrs. Massie held adversely to her father, William Bragg. The father and daughter lived together, and each exercised some control over the slave. Looking alone to the question of control and dominion, the possession would be pronounced a joint possession. Neither was holding adversely to the other, in that sense which could ripen into a title by mere force of the possession. As conclusive evidence of this

fact, we find that the father, while the joint possession continued, sold the slave, and delivered the possession to another. This shows that his claim was not a chose in action, and relieves us from the consideration of the question, whether, if Mrs. Massie had been holding the slave adversely, the administrator could have made a valid private sale to a third person.—See *Woolfork v. Sullivan*, 23 Ala. 548; *Bogan v. Camp*, 30 Ala. 276. The case is clearly within the principle which holds, that where two persons are in the joint possession of property, the title being in one, the law will refer the possession to him who has the title.—*Governor v. Campbell*, 17 Ala. 366; *McCoy v. Odom*, 20 Ala. 502; *Michan v. Wyatt*, 21 Ala. 813.

[3.] The sale by William Bragg was a private sale by an administrator, of a slave, the property of his intestate's estate; and under the principle settled in *Pistole v. Street*, (5 Porter, 64,) the title to the property did not pass out of the estate; but William Bragg estopped himself from recovering the property from his vendee.—*Fambro v. Gantt*, 12 Ala. 304; *Lay v. Lawson*, 23 Ala. 377; *Weir v. Davis*, 4 Ala. 444.

What we have said above disposes of the first and second points made in argument by appellants. Mrs. Massie never had the adverse possession.

A full answer to the third point made in argument for the appellant, is furnished in the fact, that the sale by William Bragg to David Bragg and William Knott, was not executory, but executed. It was perfected by delivery; and Messrs. David Bragg and Knott took and retained possession under their purchase. Having subsequently acquired the possession from David Bragg, William Bragg was as much estopped from relying on the invalidity of the sale made by himself, as if he himself had been plaintiff, suing for the property. The case is not within the principle settled in *Fambro v. Gantt, supra*, or in *Gunter v. Leckey*, 30 Ala. 591. The recovery in the action of detinue by David Bragg against William Bragg, is no bar to the present suit; for the title here relied on could not have been litigated in that suit.

[4.] The fourth point we must also decide against the appellant. In a suit at law, it is not permissible to vary, by parol proof, the terms of a deed absolute on its face, so as to make it operative only as a mortgage security.—*Jones v. Trawick*, 31 Ala. 256 ; *Parish v. Gates*, 29 Ala. 261, and authorities cited.

Tested by the principles above declared, we hold, that the circuit court committed no error available to appellant, either in the charges given, or in the charges refused. Those given correspond substantially with the views we have expressed. Of those refused, the 1st, 4th and 6th, are abstract. The rest do not assert correct legal propositions, and were properly refused.

[5.] What was said by the witness William Bragg, in reference to the gift of a slave to his daughter Elmira, related to an act contemporaneous with the alleged gift to Ann Eliza, was part of the *res gestæ*, and was harmless in its character; and we perceive no error in permitting the witness to speak of it. He was testifying of what he had said at the particular time, and this was given by him as a part of the conversation. This, together with certain answers of the witness as to the possession and recognized ownership of the negro girl, before the marriage of Mrs. Massie, all tended to shed light on the question of gift *vel non*, which was a material and controverted question on the trial in the circuit court.

We are not able to perceive any relevancy to the issue in this cause, of the fact sought to be proved, that the defendant (David Bragg) held a note against William Massie, which had been presented to William Bragg, the administrator, and not paid. Nor do we perceive any error in the court's ruling, which allowed the witness to state the reasons why he paid taxes on the slave Amy, after the gift, and while Ann Eliza was a minor living in his family.

We find no error in the various rulings of the circuit court, and its judgment is consequently affirmed.