# Wells, Admr., *et als.* v. American Mortgage Company of Scotland, Limited.

### *Bill in Equity to Foreclose Mortgage.*

1. *Bill in equity for foreclosure of mortgage; when heirs and personal representative of deceased mortgagor are indispensable parties* —Where a mortgagor dies intestate, seized of the equity of redemption in the mortgaged lands, his heirs and his personal representative are indispensable parties to a bill for the foreclosure of the mortgage.

2. *Revivor of suit by amendment of bill.*—An amendment of a bill in equity is not the regular or usual mode of bringing in the personal representative or heirs of a deceased defendant, but it may serve the purpose of a suggestion of the death of a defendant, and of the names of his personal representative and heirs, though the heirs are infants; and when they are served with notice to appear and plead or answer, all the purposes of the rule of practice prescribing the mode of reviving suits in equity (Rule Ch. Pr. 102, Code, p. 829) are satisfied.

3. *Same; service of summons to answer on infant defendants; rule of practice.*—Where the heirs of a deceased defendant to a bill in equity against whom a revivor is sought are infants under the age of fourteen years, residing with their mother, the widow of their deceased ancestor, a service of summons to answer made on them personally, and not on the mother, is insufficient, under Chancery Practice Rule 23 (Code, p. 814), to support a decree against them when assailed on error.

[Wells, Admr·, *et als.* v. American Mortgage Company of Scotland, Limited.]

4. *Equity pleading; parties; mode of objecting to sufficiency of averments of bill as to liability of defendant to relief sought against him.*—The general rule of equity pleading is that a bill must show not only the right and title of the complainant, but must also show the liability of the defendant to the relief sought against him; but generality or insufficiency of averment in this respect is matter of demurrer only, and if the defendant answers without objection, it is not available to him on error.

5. *Parties to bill for foreclosure of mortgage.*—Parties claiming title paramount adversely to the mortgagor and mortgagee are not proper parties to a bill in equity for the foreclosure of a mortgage, and may not be drawn into the suit to litigate and settle their rights; but prior or subsequent incumbrancers are proper parties, for they do not hold or claim in hostility to the title of the mortgagor.

6. *Same; when defendant is not deemed as asserting title in hostility to title of mortgagor or mortgagee.*—Where one who was made a party defendant to a bill in equity for the foreclosure of a mortgage on lands upon a general averment that he was in possession of part of the lands, claiming some interest therein, and taking the rents and profits, without demurring, answered the bill, admitting that he was in possession of part of the lands, claiming them in his own right, and was in reception of rents and profits; but the answer did not disclose when he entered into possession, or the nature of the right under which he entered, or from whom it was derived, but the evidence showed that his acquisition of title and of possession was derived from parties to the suit during its pendency,—such defendant is not to be deemed as asserting a legal title in hostility to the title created by the mortgage, of which the court may not take jurisdiction in the foreclosure suit, and there is no merit in the insistence of such defendant that there is a want of legal privity between him and the complainant.

7. *Same; assertion by heirs and personal representatives of deceased mortgagor of independent hostile title; exception of such claim from operation of decree of foreclosure.*—Where the heirs and personal representatives of a deceased mortgagor of land are made parties defendant to a bill for the foreclosure of the mortgage, being indispensable parties by reason of their privity with the deceased mortgagor, the assertion by them of an independent distinct title and estate, hostile to the estate created by the mortgage, does not entitle them to have the bill dismissed as to them; but the extent of their right and equity is to claim the exception of such interest from the operation of the decree of foreclosure, if a *prima facie* foundation for the assertion of such claim is shown.

8. *Absolute power of disposition to owner of life estate; effect of —* Under the statute (Code, § 1852) providing that when an absolute power of disposition is given to the owner of a particular estate for life or years, not accompanied by any trust, and no remainder is

limited on the estate of the donee of the power, he is entitled to an absolute fee, a conveyance for a valuable consideration of a life estate, with power of disposition by will or deed at any time, unaccompanied by any trust or the limitation of any remainder on the estate of the life tenant, pas es the absolute fee.

9. *Evidence to rebut fact of delivery of recorded deed.*—Where a deed from a husband to his wife is executed by both parties, and duly acknowledged and recorded, if the fact of delivery be disputable, the evidence controverting it must be clear and convincing. It must appear that there was in fact no delivery, and that at the time of its execution it was so understood.

10. *Adverse possession, as between husband and wife.*—Where a husband and wife are in the common or joint posseesion of property, the title to which is in the wife, the law refers the possession to the title.

11. *Description of land in deed; when lands not described are treated as if covered by the conveyance.*—A husband conveyed certain lands to his wife, and other lands, not described in the conveyance, were held and enjoyed during the husband's 'ife time as if, with the lands described, they constituted an entirety. After the grantor's death, the grantee, with the knowledge and acquiescence of the grantor's heirs, who were of full age, remained in possession for six years, and during that time mortgaged all said lands, the grantor's heirs knowing of the mortgage; and, the grantee dying, her personal representative. without-objection, entered into and retained possession until displaced by a receiver appointed in a suit to foreclose said mortgage. *Held*, that, in the absence of explanation of these facts, a claim of the grantor's heirs in the foreclosure suit that their rights to the lands not described in the deed should be excepted from the operation of the decree of foreclosure could not be maintained.

12. *Possession under unrecorded deed; when not notice to subsequent purchaser.*—To operate as notice to a subsequent purchaser from the grantor, a grantee's possession under an unrecorded deed must be open, visible, exclusive, and unambiguous, not liable to be misconstrued or misunderstood.

13. *Stipulation in mortgage for payment of attorney's fees; averment as to necessity of foreclosing by suit.*—When in a bill for the foreclosure of a mortgage containing a power of sale attorney's fees are claimed for the filing of the bill, under a stipulation in the mortgage for the payment of such fees by the mortgagor in the event it becomes necessary to employ an attorney to collect any part of the mortgage debt or to foreclose the mortgage, the bill must aver some sufficient fact or facts showing why such form of foreclosure is necessary; and an averment "that it is necessary to foreclose this mortgage by a bill in chancery, because complainant could not purchase at its own sale under the power contained in the mortgage, and without the power so to do the property would not bring its full value, and complainant

[Wells, Admr., *et als.* v. American Mortgage Company of Scotland, Limited.]

would lose a part of its debt,"—sufficiently shows the necessity for foreclosure by bill in chancery.

14. *New parties added to bill in equity by revivor or amendment; evidence already taken admissible against them.*—Where, on the death of a defendant administrator, a suit in equity is revived against the administrator *de bonis non*, and, by amendment, a person is made a party defendant who acquired and asserts an interest in the property in controversy derived from parties to the suit during its pendency, evidence already properly taken in the cause is admissible against them.

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. S. K. McSPADDEN.

This was a bill in equity by the American Mortgage Company of Scotland, Limited, against the personal representative and heirs of Sarah Wells, deceased, to foreclose a mortgage executed by said Sarah Wells to the complainant, conveying certain lands described therein. C. C. Wells, the administrator of the estate of Sarah Wells, deceased, and one of her children, having died subsequent to the filing of the original bill, an amendment to the bill was filed suggesting the death of said C. C. Wells, bringing in the administrator *de bonis non* of the estate of Sarah Wells, deceased, as a party defendant, and praying that the heirs at law of C. C. Wells, who were minors, be made parties defendant. By this amendment W. S. Cary was also made a party defendant. The opinion sufficiently indicates the matters suggested as defenses by the answer of the defendants, and the evidence by which they were sought to be supported. The administrator *de bonis non* of Sarah Wells, deceased, and the defendant Cary objected to the admission against them of the evidence taken in the cause in behalf of the complainant before the death of the administrator in chief and before the defendant Cary was made a party to the suit. On the final submission of the cause on the pleadings and proof the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered a foreclosure of the mortgage. The respondents appeal, and assign as error the rendition of said decree. The several rulings considered in the opinion are also separately and severally assigned as errors by the respective respondents.

28

[Wells, Admr. *et als.* v. American Mortgage Company of Scotland, Limited.]

W. S. CARY, for appellants.—The Chancery Court has no jurisdiction when the legal title is in dispute.—*Hambrick v. Russell*, 86 Ala. 199; *Tecumseh Iron Works v. Camp*, 93 Alo.; *Randall v. Boyd*, 73 Ala. 282. If the deeds to the mortgagor were not delivered,—were not intended to be delivered, if in fact they were made to protect the grantor against old claims, and he, after the execution thereof, remained in the adverse possession of the lands, as is shown by the respondents' evidence,—then certainly the legal title is in dispute. Mrs. Etta Woodward claims under a deed from the mortgagor executed prior to the execution of the mortgage. Under the authority of *Hambrick v. Russell, supra,* there can be no question that the Chancery Court was without jurisdiction as to this land.

Service of process was made upon the minors by handing a copy to them, when they resided with their mother, as is shown in the amended bill. This is reversible error as to them.—3 Brick. Dig. p. 374, § 112; 1 Brick. Dig. p. 764, § § 1829, 1850-1-2-3.

Appellee's evidence was taken before the administrator *de bonis non*, the minors, and W. S Cary were made defendants, and was used against them, over their objections. This was error—Code. p. 820, Rule 51.

The amended bill failed to show any priority as to the defendant Cary.—Daniell's Ch. Pr. p. 223 and note; Story's Eq. Pl. § § 178, 227, 514.

The respondents' evidence showed that the deed to Cunningham, trustee, was never delivered, or intended to be delivered, and that the grantor retained possession. Ordinarily, the instrument in such cases is not required to be delivered. But "if the deed was never delivered it may be a controlling circumstance to show that the trust was never perfectly created, or was revocable." Perry on Trusts, § 100. This authority is sufficient to show that the Chancery Court could not interfere.

If the deed was delivered, and was in all respects valid, it conveyed but a life estate, with a superadded power of disposition.—*Denson v. Mitchell,* 26 Ala. 360; 129 Mass. 286; Perry on Trusts, § 768. The authorities are collected in 15 R. I. 625. The deed would not authorize a mortgage.—*Stokes v. Payne,* 58 Miss. 614; 52 N. H. 267.

[Wells, Admr., *et als.* v. American Mortgage Company of Scotland, Limited.]

Attorney's fees should not have been allowed.—*Bedell v. New England Mortgage Co.* 91 Ala. 325.

KNOX, BOWIE & DIXON, *contra.*—1. Where the grantor and grantee live together upon the same place, and the deed is not recorded, and there is no visible change in the possession, the mere fact that the grantee resides upon the place is not sufficient to put an innocent purchaser for value upon notice.—*King v. Paulk*, 85 Ala. 186; *King v. Paulk*, 86 Ala. 333; *Troy v. Walter*, 87 Ala. 237; *Watt v. Parsons*, 73 Ala. 202. (2) Where all the parties to a suit claim from a common source of title, each is estopped from disputing the title of the person through whom he claims. (3) No party to a suit can set up the fraud of himself or any person in privity with him, either in defense or in the maintenance of an action.—*Kelly v. Karsner*, 72 Ala. 106; *King v. King*, 61 Ala. 479; 3 Brick. Dig. p. 514, § 105. (4) Where the grantee of an unrecorded deed has notice that the grantor intends to sell or mortgage the property, and actively assists in the making of the mortgage, as by bringing pen and ink, with which it can be signed, and makes no objection thereto, and does nothing to put the purchaser or mortgagee upon notice of her deed, she is estopped in equity from setting it up in defense of a bill to foreclose the mortgage.—*Trenton Bkg. Co. v. Duncan*, 86 N. Y. 222; 7 Am. & Eng. Ency. of Law, 12, 13. 18. (5) Where the evidence in the case shows that the money is the wife's statutory separate estate, was used in the purchase of lands by her husband, and the title thereto taken in the name of the husband, the wife has a resulting trust in equity in the land, which a mortgagee claiming through her can enforce against the heirs of the husband, if the facts are brought to the attention of the court by appropriate pleadings, whether there has been any conveyance to the wife or not. In this case, these facts are appropriately brought to the attention of the court by the answer of the defendants, which sets up the deed from A. J. Wells to his wife, dated March 2, 1867, wherein it appears that the purchase money for the lands in controversy was paid by money belonging to the separate estate of Sarah Wells.—*Robison v. Robison*, 44 Ala. 227. (6) The conveyance from A. J. Wells to his wife,

dated March 2, 1867, having been duly recorded, and being for her benefit, and there being no dissent on her part, the presumption of delivery is conclusive.—*Elsberry v. Boykin*, 65 Ala. 336. (7) Where two or more persons are in the joint possession of land, the possession is referred to the holder of the legal title. Especially is this true in cases of husband and wife.—*Duncan v. Williams*, 89 Ala. 341; *Gafford v. Strauss*, 89 Ala. 283. (8) The deed from A. J. Wells to his wife, dated March 2, 1867, by the terms of our statute, conveyed a fee simple title, so far as the rights of creditors and purchasers were concerned.—Code, § § 1850, 1853: *Alford v. Alford*, 56 Ala. 350. (9) There being no duties for the trustee to perform, said deed passed the fee directly to Sarah Wells.—Code § 1831. (10) Upon the death of a defendant, a suit may be revived by an amended bill, and in such case it is proper for the summons to be served upon the heirs directly; Rule 23, p. 814 of the Code, having no application in such a case.—Code, p. 829, Rule 102; *Floyd v. Ritter*, 65 Ala. 501. (11) In a mortgage suit all that is necessary to bring in a subsequent incumbrancer is to state that he claims some interest in the subject of the bill, and pray for a summons to him to answer. This having been done, W. S. Cary was properly before the court, as a subsequent incumbrancer; and if in fact he sustained any other relation to the subject matter of the suit, it was for him to show it in his answer. His answer is tantamount to an admission of the facts set up in the amended bill, which are equivalent to the statement that he is a subsequent incumbrancer.—Code, p. 831, Rule 107. (12) In a bill to foreclose a mortgage, the heirs of the mortgagor are necessary parties, and they cannot defeat the filing of the bill by simply swearing that they claim title through their father, instead of their mother. The court having acquired jurisdiction, and all the parties to the bill being necessary, it will settle all the rights of the parties, notwithstanding the heirs of the mortgagor may dispute her title.—*Randle v. Boyd*, 73 Ala. 282; *Bell v. Hall*, 76 Ala. 546; *Price v. Carney*, 75 Ala. 546; 2 Jones on Mortgages, § 1414; 3 Brick. Dig. p. 331, § 11. (13) Attorney's fees in this case were properly allowed, under the

averments of the bill as amended.—*American Freehold Land Mortgage Co. v. McCall*, 96 Ala. 200.

BRICKELL, C. J.—The scope and purpose of a bill for the foreclosure of a mortgage on lands is to cut off the equity of redemption of the mortgagor, to obtain a decree for the sale of the estate created and passing by the mortgage, and the application of the proceeds of sale to the payment of the mortgage debt. Such being the scope and purpose of the bill, the general rule in a court of equity applies that all persons whose interests are to be affected or concluded by the decree must be made parties. If mortgagor and mortgagee are in life, generally, the rule will embrace them only, and those who may have acquired rights or interests under them. If, as in the present case, the mortgagor dies intestate, seized of the equity of redemption, his heirs are indispensable parties, for by descent the equity of redemption devolves upon them. And it has grown to be a settled rule in our system, varying from the general rule prevailing in courts of equity, that the personal representative is an indispensable party, not upon the theory that he succeeds to any estate or interest in the lands, but for the reason that he has statutory authority to rent the lands, and thereby may intercept the possession of the heir; and he has statutory power to obtain decrees from the court of probate for a sale of the lands, and thereby may intercept the descent to the heir; and for the further reason that he is the exclusive representative of the personal assets, having an interest in the ascertainment of the mortgage debt, which may become a charge upon them, if the sale should not yield a sufficiency to satisfy it.—*Wilkins v. Wilkins*, 4 Port. 245; *Dooley v. Villalonga*, 61 Ala. 129; *Bell v. Hall*, 76 Ala. 546; *Gardner v. Kelso*, 80 Ala. 497; *Moore v. Alexander*, 81 Ala. 509; *Jones v. Richardson*, 85 Ala. 463.

The death of the personal representative, the administrator in chief, pending the suit, necessitated a revivor against his successor in the administration; and, as he was an heir of the mortgagor, also against his heirs. When an abatement occurred in a suit, in the original practice of courts of equity the usual mode of reviving it, and of continuing the proceedings, was by bill of re-

vivor. Story, Eq. Pl. § 354; 1 Brick. Dig. 599. The order or decree entered was that the cause be and stand revived in the plight and condition it was when the abatement occurred. Unless so directed by the chancellor, a bill of revivor is not now necessary. On motion *ex parte*, or upon a verbal suggestion before the register in vacation, or to the chancellor in term time, of the fact and cause of the abatement, an order may be made for a summons to issue to the proper parties to appear and defend; and upon the expiration of the period appointed for them to appear, service of summons having been made, if they interpose no just objection, the cause is considered as revived. (Rule 102 Ch. Pr., Code, p. 829). In *Floyd v. Ritter*, 65 Ala. 501, it was held, in a case in which the parties were *sui juris*, that the amendment of a bill was not a very regular or usual mode of introducing the personal representative or heirs of a deceased defendant; but that it could serve the purpose of a suggestion of the death of the defendant, and of the persons who were his heirs and representatives; and when they were served with notice to appear and plead or answer, all the purposes of the rule of practice were satisfied. We apprehend no reason for limiting the ruling to cases in which the parties are *sui juris*. If the purposes of the rule are satisfied when the record discloses the fact and cause of abatement, and who are the necessary parties to be introduced to cure it, and notice is given them to come in and defend, there is no reason, suggested or apparent, for withholding an extension of it to infants, or others who are not *sui juris*. The course of procedure cannot be regular in the one case and irregular in the other.

The rules of practice require that summons to answer bills issuing against infants be served upon their parents, or either of them, if in life, or in case they are dead, upon the general guardian of such infant, if the parent or guardian has not an adverse interest. (Rule 23 Ch. Pr., Code, p. 814). The heirs against whom the revivor was sought, the amended bill avers, were infants under the age of fourteen years, residing with their mother, the widow of their deceased ancestor. The service of summons to answer was made on them personally, and not on the mother. The rule has been

long settled that, to support a decree against infant defendants, when assailed on error, the record must affirmatively show that they were brought before the court in the mode prescribed by the rules of practice; and that, until this mode has been pursued, the appointment of a guardian *ad litem* to represent them is premature and irregular.   3 Brick. Dig. 374, §§ 111, 121.

The amended bill introduced the appellant Cary as a party defendant, upon a general averment that he was in possession of a part of the lands, claiming some interest therein, and taking the rents and profits.   This general averment, it may be, would be sufficient under the rule of practice in mortgage suits (Rule Ch. Pr. 107, Code, p. 831), if accompanied with the averment that Cary was a subsequent incumbrancer; but the rule is by its terms limited to subsequent incumbrancers, and cannot be extended to others having other rights or interests, rendering them necessary or proper parties. The general rule of equity pleading is that a bill must not only show the right and title of the plaintiff, but must also show the liability of the defendant to the relief sought against him; such liability constitutes the privity between the parties.   1 Dan. Ch. Pl. & Pr. (5th ed.) 326; Story Eq. Pl. § 262   Generality or insufficiency of averment in this respect is, however, matter of demurrer only, and if the defendant answers without objection, it is not available to him on error.   Cary, not having demurred, answered jointly with the other defendants, admitting that he was in possession of part of the lands, claiming them in his own right, and was in reception of the rents and profits.   When he entered into possession, or the nature of the right under which he entered, or from whom it was derived, the answer does not disclose. If his claim of right and title was not in subordination, but in hostility to the mortgage, it should have been stated distinctly, with a statement of its source, and from whom and when derived, and when his possession accrued.   If the right and title were paramount and unaffected by the mortgage, then he should have made a disclaimer, and prayed as to himself a dismissal of the suit. 2 Jones Mort. § 1440.   But his acquisition of title and of possession was derived from parties to the suit during its pendency, as is shown by the evidence; and can-

not affect the rights of the complainant; for these parties could make no alienation which would free the lands from the decree the complainant may finally obtain. 2 Pomeroy Eq. § 633 *et seq;* 2 Jones Mort. §§ 1411, 1444; *Doe v. Magee*, 8 Ala. 570. We are not, therefore, of the opinion there is any force in the insistence now urged by Cary that there is a want of legal privity between him and the complainant; nor that he must be deemed as asserting a legal title in hostility to the title created by the mortgage, of which the court in the present suit may not take jurisdiction.

It results from the nature, scope and purpose of a foreclosure suit, as we have defined it, that parties claiming title paramount, adversely to the mortgagor and mortgagee, are not proper parties, and may not be drawn into the suit to litigate and settle their rights. The estate or interest in the lands which is drawn within the operation of the suit, which will be affected and bound by the decree, is the estate created and passing by the mortgage, or estates or interests subsequently acquired by the mortgagor, inuring by way of estoppel to the benefit of the mortgagee. Prior or subsequent incumbrancers are proper parties, for they do not hold or claim in hostility to the title of the mortgagor,—they claim under and through him. But parties claiming by independent, distinct titles, adversely to the mortgagor and mortgagee, are not proper parties. The suit cannot be properly constituted for the purpose of litigating such titles,—the parties in whom they reside derive from them no rights or interests the decree of foreclosure can affect, and are without right to resist its rendition.—2 Jones Mort. § 1440; *San Francisco v. Lawton*, 18 Cal. 446; (s. c. 79 Am. Dec. 187;) *Randle v. Boyd*, 73 Ala. 282; *Lyon v. Powell*, 78 Ala. 351; *Hambrick v. Russell*, 86 Ala. 199; *Bolling v. Pace*, 99 Ala. 607. If it be apparent from the bill that such parties are drawn before the court for no other purpose than the litigation of such titles, a demurrer for misjoinder and multifariousness will be sustained, and demurrer is the appropriate mode of presenting the objection. If the objection is not apparent on the face of the bill, a plea or answer averring the facts will be entertained.—*Bolling v. Pace, supra.*

It is not apparent from any matter stated in the bill

[Wells, Admr., *et als.* v. American Mortgage Company of Scotland, Limited.]

that the parties defendant claim to have any title or interest adverse to the estate created by the mortgage. The case made is rather in exclusion of such right or interest. All who were made parties defendant (except the defendant Cary who was brought in by amendment, and whose relation to the suit we have considered) are indispensable parties by reason of their privity with the deceased mortgagor. They are her heirs and personal representatives, succeeding to and by operation of law representing her rights and interests. It is only from the answer of the heirs it appears that they assert an in-independant, distinct title and estate, hostile to the estate created by the mortgage, derived by descent from their father. If they have such title or estate, they may claim its exception from the operation of the decree of foreclosure, and this is the extent of their right and equity. The claim which they now prefer, that the bill should be dismissed, can be preferred only by strangers, made parties to litigate the strength of their adverse title. Without regard to such title, the heirs are necessary parties, and if it be found that such adverse title has a *prima facie* existence, saving or excepting it from the operation of the decree of foreclosure metes out strict justice,—no prejudice to their rights, nor to the rights of the plaintiff can follow in any subsequent and appropriate proceeding to test the strength of such title.—2 Jones Mort. § 1439 ; *San Francisco v. Lawton, supra.*

But, to bring a case within the reason and operation of the rule, something more is necessary than a denial in the answer of the title of the mortgagee, and the assertion of a hostile title in the defendant. In 2 Jones Mort. § 1440, it is stated that ''whether an asserted claim is such an adverse one as to come within the rule depends, not upon what is set up in the answer in regard to it, but upon the allegations of the bill, and upon the testimony in the case as to the nature of the alleged claim.'' The court, of necessity, must look into the nature and character of the claim far enough to see whether there is *prima facie* foundation for its assertion ; whether it is of any validity ; or is a mere pretense obtruded to embarass the plaintiff and to protract litigation.— *Wilkinson v. Green*, 34 Mich. 221 ; *Carbine v. Sebastian*, 6 Bradw. 564.

The answers admit that near twenty years before the execution of the mortgage the father by deed, a copy of which is exhibited, conveyed the lands (or the greater part of them) to a trustee, for the sole use and benefit of the mortgagor, empowering her "to sell, dispose and enjoy said property to her sole and separate use during her natural life, and to dispose of the same by will or deed at any time." The deed expresses a valuable consideration, a liability the grantor had incurred by reason of his use, misappropriation and conversion of the separate estate of the *cestui que trust*, his wife. All parties, the grantor, *cestui que trust*, and the trustee, joined in its execution. The fact of execution was acknowledged before and certified by a justice of the peace, and on the day of execution the deed was filed in the office of the judge of probate for record, and was therein duly recorded.

The first contention is that the deed created in the mortgagor a life estate only, coupled with a power of disposition which could be exercised in no other mode than by deed or will, and that a mortgage was not within the scope of the power; and, of consequence, as there was no limitation over, on the death of the mortgagor, there was a reversion of the fee to the grantor or his heirs. If this construction of the conveyance could prevail, we are not impressed with the force of the argument that conveyance by mortgage would not be a disposition by deed, within the meaning of the power. But we do not deem this construction of the conveyance admissible. It is a settled rule of the common law, as recognized in this State, that an estate, though expressed to be for life, created by will or deed, to which is annexed a general power of disposition, is thereby enlarged into a fee or absolute title.—*Alford v. Alford*, 56 Ala. 350, and authorities cited; *Bolman v. Lobman*, 79 Ala. 63, The statutes now in some respects modify, and in others are declaratory or affirmatory of, this rule of the common law.—Code, §§ 1850–53. The first of these sections relates to an absolute power of disposition given the owner of a particular estate for life or years, when there is a limitation of future interests, rendering the fee absolute only in favor of creditors or purchasers, but, as between the donee of the particular estate and the re-

mainderman, preserving the future interests, if the power
of disposition is not exercised.   The purposes and oper-
ation of this section. were very fully discussed and ex-
plained in *Alford v. Alford, supra.*   As there was no limi-
tation of future interests in the conveyance before us, it is
within the operation of section 1852, which declares that
"in all cases where such absolute power of disposition is
given, not accompanied by any trust, and no remainder
is limited on the estate of the donee of the power, he is
entitled to an absolute fee."   This section is declaratory
and affirmatory of the rule of the common law.   The suc-
ceeding section declares : "Every power of disposition is
deemed absolute, by means of which the donee of such
power is enabled in his lifetime to dispose of the entire
fee for his own benefit."   This is substantially, if not
literally, the definition of an absolute power of disposi-
tion given by Chancellor Kent.—4 Kent, 320.   Though
the estate was expressed in the conveyance as an estate
for life, the power is general, at any time to dispose of
the fee by deed or will,—the only instruments by which
the legal estate in lands may be transferred.   And as the
conveyance was not voluntary, but founded on a valua-
ble consideration, moving from the donee, there can be
no doubt it was contemplated the power would be exer-
cised for her own benefit.   We are therefore of opinion
that the conveyance passed the absolute fee.

The next point of contention is that the conveyance
was never perfected by delivery ; that the grantor re-
tained dominion over it, remained in the possession and
control of the lands, exercising all the acts of ownership
over them which he had exercised prior to the signing
of the conveyance.   We will not analyze and discuss the
evidence which is supposed to support this contention,—
the necessities of judgment do not compel it, and it would
be an unprofitable and unpleasant task.   Delivery is a
necessary incident to the due execution of a deed, for it
takes effect only from the delivery.   But when a deed is
executed with all the formalities essential to perfect it,—
when grantor and grantee join in its execution, the
grantee thereby manifesting acceptance of it,—when the
execution is acknowledged before an officer having au-
thority to take and certify the acknowledgement, and it
is spread upon the public records as notice to all the

world of its existence,—if the fact of delivery be disputable, the evidence controverting it must be clear and convincing; it must appear that there was not in fact delivery, and that at the time of execution it was so understood. *Souverbye v. Arden*, 1 Johns. Ch. 252; *Scrugham v. Wood*, 15 Wend. 545 (S. C. 30 Am. Dec. 75); *Elsberry v. Boykin*, 65 Ala. 336. In 4 Kent. 456, it is said: "If both parties be present, and the usual formalities of execution take place, and the contract is to all appearances consummated without any condition or qualification annexed, it is a complete and valid deed, notwithstanding it is left in the custody of the grantor."

It may be true that after its registration the original conveyance was by the husband received or taken from the office of the judge of probate, and that thereafter during life it remained in his custody. The custody, at the most, would be but slight evidence that there had not been delivery. The husband is not in a strict sense the legal custodian of the wife's title papers. In the social conditions here existing, most usually he is the the actual custodian; and such custody can not be said to be in conflict, or not in harmony, with the fact of delivery, or of the same force as matter of evidence that it would be if the relation of husband and wife did not exist. We are of the opinion the delivery of the conveyance is established.

In reference to the supposed adverse possession of the husband, subsequent to the execution of the conveyance, it would seem necessary only to say that, as has been often declared in this court, the universal principle is, that where two persons are in the common or joint possession of property, the title being in one, the law refers the possession to the title. *Newmav v. James*, 12 Ala. 29; *Michan v. Wyatt*, 21 Ala. 813; *Bragg v. Napier*, 38 Ala. 105; *Tompkins v. Nichols*, 53 Ala. 197; *Newbrick v. Dugan*, 61 Ala. 251; *Scruggs v. Decatur Mineral & Land Co.*, 86 Ala. 173; *Harper v. Rudd*, 89 Ala. 371; *Duncan v. Willians*, ib. 341. Whether, as between husband and wife, there may not, under the existing statutes, be an adverse possession, under what circumstances it may arise, and by what degree of evidence it may be shown, is an inquiry on which it is not necessary to enter. The possession of the husband had in it no element of exclusive-

ness, and was not asserted as hostile to the title of the wife. When considered in the light of all the evidence, it was no more than the possession which, during its existence, the husband could rightfully have of the lands of the wife. And it must be observed that all possessions are presumed to be rightful, friendly, not hostile to the true title; the presumption casting upon whoever may assert an adverse possession the burden of proof. The conduct of all parties in interest, until they were under the stress of this litigation, is in harmony with the conclusion that the possession of the husband had in it no element of an adverse possession. The wife survived him for six years or more; was in possession of the lands taking the rents and profits, conveying parts of them to some of the children, presumably with the knowledge of all, and without dissent from any source. After her death her personal representative succeeded to the possession, with the acquiescence of all parties in interest. This conduct is inexplicable on the hypothesis that there was an adverse possession by the father.

It is next insisted that the mortgage embraced lands not described in or passing by the conveyance from the husband to the mortgagor, and that the decree of foreclosure should have saved and excepted from its operation the rights of the defendants as to these lands. There is more of force in this insistence than in any of the other contentions on the part of the defendants. But, when taken in connection with all the evidence, we are unwilling to yield assent to it. It was never preferred until after this litigation commenced. Nor by any act were these lands distinguished from the lands passing by the conveyance, during the lives of the grantor and grantee. They seem at all times to have been held and enjoyed as if, with the lands described in the conveyance, they constituted an entirety. The grantor died; the grantee remained in possession of them as if they were parts of the body of land passing by the conveyance, for six years. The heirs of the grantor were of full age, cognizant of the possession, and acquiesced. The heirs knew of the mortgage; and, the grantee dying, her personal representative, without objection, entered into and retained possession until displaced by the receiver appointed in this cause. There is no explanation of these

facts, and in their presence unexplained we are not prepared to say there is just foundation for the claim now preferred.

The unrecorded deed by which the mortgagor, prior to the mortgage, reserving to herself a life estate, conveyed a parcel of the mortgaged lands to Etta Woodward, the statute denounces as void as to purchasers for valuable consideration, mortgagees, and judgment creditors, without notice. Code, § 1810. Notice to the mortgagee is sought to be imputed upon averments that at the time of the mortgage Mrs. Woodward had actual possession of the land conveyed to her. Actual and unequivocal possession will operate as notice of an unrecorded conveyance or of an outstanding equity. But to operate as notice, as has been often expressed, the possession must be open, visible, exclusive and unambiguous, not liable to be misconstrued or misunderstood. *LeNeve v. LeNeve*, 2 Lead. Eq. Cases, 180 ; Wade Law of Notice, § § 288-91. If there was possession by Mrs. Woodward, not mere occupancy by the sufferance of the mortgagor, it was not exclusive,—not distinguishable from the possession of the mortgagor, and was of that class of mixed, ambiguous possessions, which could not put the most diligent on inquiry as to the right in which she was holding.

The mortgage contains two separate, distinct stipulations in reference to the payment of attorney's fees by the mortgagor. The first is, in the event it becomes necessary to employ an attorney to collect any part of the mortgage debt, or to foreclose the mortgage. The second is, in the event of a foreclosure by the exercise of the power of sale contained in the mortgage. Such stipulations have been uniformly sustained in this court. *Pollard v. American Freehold Land Mortgage Co.*, 103 Ala. 289, and authorities cited. When fees are claimed for the filing of a bill of foreclosure, the mortgage containing a power of sale, the bill must aver "some sufficient facts or facts showing why such form of foreclosure is necessary." The averment of the present bill is, "that it is necessary to foreclose this mortgage by a bill in chancery, because complainant could not purchase at its own sale under the power contained in the mortgage, and without the power so to do

[Wells, Admr., *et als.* v. American Mortgage Company of Scotland, Limited.]

the property would not bring its full value, and complainant would lose a part of its debt." The averment disclosed the necessity to resort to this remedy, and the chancellor was not in error in the allowance of attorney's fees. *Bedell v. New England Mortgage Security Co.*, 91 Ala. 325 ; *American Freehold Land Mortgage Co. v. McCall*, 96 Ala. 200.

The remaining question is whether the evidence taken before the death of the administrator in chief, and before the defendant Cary was made a party, was admissible against the successor in the administration, and against Cary. As we have said, the effect of a revivor of a pending suit in equity is the restoration to the plight and condition in which it was when the abatement occurred. Ordinarily, the parties introduced are the successors in right and interest of parties whom death or some legal disability render incapable of further continuing the proceedings. It results, of necessity, that whatever of evidence was properly taken in the cause before the death of the administrator in chief remained admissible and was properly used on the final hearing. And if the infant heirs, succeeding to the estate of their deceased ancestor, had been properly made parties, the evidence would have been equally admissible against them. As the interest Cary acquired and asserts was derived from parties to the suit, the evidence is admissible against him. He comes into court, as it is said, *pro bono et malo.* 2 Dan. Ch. Pr. 1535-36.

We have considered and decided all the questions raised by the assignments of error and the arguments of counsel. The only error we have found in the record is the irregularity in making the infants parties, and that compels a reversal of the decree.

Reversed and remanded.