### BELL *vs.* BELL'S ADM'R.

[DETINUE FOR SLAVES, BY WIFE'S, AGAINST HUSBAND'S ADMINISTRATOR.]

1: *Adverse possession between husband and wife ; prescription.*—At common law, the possession of personal property by the wife, during coverture, is the possession of the husband, and cannot ripen into a perfect title in her, as against the husband's administrator, although it is shown that the husband had abandoned her when her possession commenced; that he never afterwards returned to her, and never asserted any claim to the property; and that she held and claimed it, as her own individual property, for a continuous period of more than twenty years.

APPEAL from the Circuit Court of Wilcox;
Tried before the Hon. JOHN K. HENRY.

THIS action was brought by the administrator of Mrs.

Lucy Bell, deceased, against William C. Bell, to re-
cover certain slaves, which the defendant held and claimed
as the administrator of George W. Bell, deceased, who was
in his life-time the husband of the plaintiff's intestate;
and was commenced on the 10th March, 1858. The case
was before this court at its June term, 1860, and may be
found reported in 36th Ala. 466–82. The facts in proof on
the second trial, as. set out in the bill of exceptions, were
substantially the same as on the first trial, and may be thus
stated : George W. and Lucy Bell were married, in this
State, in the year 1816, said Lucy being then the widow
of John Raiford, deceased ; and they lived together as man
and wife, in Clarke county, until 1821, 1822, or 1823, (the
witnesses could not recollect the precise time,) when Bell
left his wife and family, and went to Mobile, where he con-
tinued to live until his death, which occurred in the year
1843. In 1823, 1824, or 1825; (two or three years after
her abandonment by her husband,) Mrs. Bell removed to
Wilcox county, carrying her five children (three by Rai-
ford, and two by Bell) with her ; and she continued to re-
side there until her death, in 1855, supporting and edu-
cating her children without any assistance from her said
husband. In 1826, or 1827, Mrs. Bell received from the
administrator of John Raiford's estate, as her distributive
share of the estate, a negro woman named Linda, who,
with her increase since that time, is the subject of contro-
versy in this suit ; and these slaves continued in the unin-
terrupted possession of Mrs. Bell, who claimed them as her
own individual property, and exercised all the ordinary
acts of ownership over them, up to the time of her death.
Letters of administration on the estate of George W. Bell
were granted to the defendant on the 4th October, 1855;
(whether before or after the death of Mrs. Bell, the record
nowhere shows,) and he soon afterwards took possession of
the slaves, claiming them as a part of his intestate's estate,
and returned them as such in his inventory. Letters of ad-
ministration on the estate of Mrs. Lucy Bell were granted
to the plaintiff on the 17th December, 1855.

"On the foregoing evidence, the court charged the jury, that if they believed, from the evidence, that the plaintiff's intestate, Mrs. Lucy Bell, received the slaves sued for from the administrator ot her former husband, as her distributive share of said estate; and that the defendant's intestate, George W. Bell, at and before that time, had abandoned his wife, the said Lucy, and never lived with her any more; and that the plaintiff's intestate retained the said slaves in her undisturbed possession for a period of more than twenty years before her death, and up to and after the death of her said husband, without any claim to them being set up on his part; and that the plaintiff's intestate, during this whole period of twenty years possession, had the entire and undisturbed control of said slaves, exercising acts of ownership over them, and openly and notoriously claiming them as her own individual property all the time,—then the law would raise the presumption from these facts, if unexplained, that she acquired the property in such way as to prevent the marital rights of her husband from attaching, and to vest the property in her to the exclusion of her husband's marital rights; and this, notwithstanding said George W. Bell died before the twenty years possession had elapsed, and there was no administrator on his estate until after the twenty years possession had elapsed."

The defendant excepted to this charge, and requested the court to instruct the jury, "that, if they believed all the evidence, they must find for the defendant;" which charge the court refused to give, and the defendant excepted to its refusal.

The charge given, and the refusal of the charge asked, are now assigned as error.

BYRD & MORGAN, with L. S. LUDE, for appellant.—The doctrine of prescription is founded on the presumption of acquiescence in the assertion of a hostile claim, and requires an adverse possession to support it.—*Cockrell v. Brown*, 33 Ala. 38; *Roundtree v. Brantley*, 34 Ala. 544.

But there can be no adverse possession between husband and wife. At common law, the possession of the wife, during coverture, is the possession of the husband, and cannot become antagonistic to his rights. There can be no presumption of acquiescence on his part in the assertion of a hostile claim by the wife, because he has no remedy by action against her. To say that he has a remedy by simply asserting his marital rights, and that his failure to assert them during coverture shows an abandonment of them, is, in effect, to make the wife's title depend, not on the doctrine of prescription, but on the husband's desertion of her, which, as was decided on the former appeal, can have no such effect.—36 Ala. 466.

D. W. BAINE, *contra.*—Adverse possession, in its technical sense, is not a necessary ingredient of a title by prescription. If it were, the doctrine of prescription would be entirely useless and meaningless, since the title would, in every case, be complete, under the shorter statute of limitations, (six years where personal property is in controversy,) long before the prescription could be invoked. The doctrine of presumption, asserted by the charge of the court below, is something more than the old common-law prescription, and more than a statute of limitations. These latter barred the remedy, and operated on the title only in that way. But the doctrine of prescription is intended to apply to cases to which those statutes do not extend, as is clearly shown by the extract from *Sims v. Aughtery,* (4 Strob. Eq. 103,) cited in *McArthur v. Carrie's Adm'r,* 32 Ala. 92. It requires, for its application a possession under a claim of right, inconsistent with, and hostile to, the claim sought to be barred; and this is the true test, as established by many analogous decisions.

Thus, it has been held, that an administrator, who makes an illegal and void sale of the property of the estate, is estopped by his own act from suing for the property; and that the statute of limitations does not begin to run in favor of the purchaser, as against the estate, until the ap-

pointment of a succeeding administrator ; in other words,
that the purchaser cannot be considered as holding ad-
versely, in the strict technical sense of the term, until there
is some one who has a right to sue.—*Pistole v. Street*, 5 Por-
ter, 14 ; *Hopper v. Steele*, 18 Ala. 828 ; *Lay v. Lawson*,
24 Ala. 186 ; *Wyatt's Adm'r v. Rambo*, 29 Ala. 525. Yet
it has been held also, in an equal number of cases, that if
the purchaser holds possession for twenty years, his title
will be protected by the indulgence of the presumption,
that a valid authority to sell originally existed.— *Gantt
v. Phillips*, 23 Ala. 275 ; *Lay v. Lawson*, 23 Ala. 391 ;
*McArthur v. Carrie*, 32 Ala. 75 ; *Wyatt's Adm'r v. Scott*,
33 Ala. 317. So, it has been held, that the possession of
a mortgagor or purchaser of lands cannot be adverse until
the debt is paid ; *(Byrd v. McDaniel*, 33 Ala. 18 ; *Relfe
v. Relfe*, 34 Ala. 505 ;) yet, if such possession continues
twenty years, the title becomes perfect by the presumption
of payment. It is said in the case last cited, that "it
would be a violation of all principle to allow the acquisi-
tion of title by the lapse of time ;" yet the same result is
attained by applying the doctrine of presumption,—thus
clearly recognizing the difference between the two princi-
ples.—See, also, *Harvey v. Thorpe*, 28 Ala. 264 ; *Rhodes v.
Turner*, 21 Ala. 210.

The cases above cited show, that, after the lapse of
twenty years, a deed, payment, grant of administration,
regular order of sale, or (to use the language of the court
in *Sims v. Aughtery, supra*,) "almost anything else," will
be presumed, to quiet the possession. Why cannot the
principle be invoked by the wife, in a case like this ? Her
possession, it is true, is, technically, the possession of her
husband ; but in the same sense the possession of the mort-
gagor or purchaser is that of the mortgagee or vendor.
On the facts supposed in the charge, her possession has
been under claim of right, and has continued more than
twenty years ; and it is the duty of the courts, when asked
to disturb her possession, to presume that she claimed a
separate estate in the property, or anything else that will
perfect her title.

A. J. WALKER, C. J.—When this case was before in this court, we announced the principle, applicable to cases governed by the common law, that the wife can not possess personal property; that her possession is the possession of the husband, and that this principle resulted from the unity of husband and wife. It is not the same principle which applies to the relation of mortgagor and mortgagee, and of landlord and tenant. In those cases, the doctrine that the possession of the one is the possession of the other, grows out of the law of estoppel. The possession of the wife is the possession of the husband, because her legal existence is merged in his, and the wife is positively incapable of a possession, in the eye of the law, distinct from that of the husband. From this principle it is an inevitable deduction, that the law deems the husband of Mrs. Bell to have been, through her, in possession of the property in controversy up to his death. This being the case, there was no antagonism of possession on the part of Mrs. Bell to her husband. It is not contended, and indeed it could not be, either upon authority or reason, that the presumption, which is drawn for the quieting of titles from the lapse of time, is permissible in the absence of any enjoyment of the right asserted antagonistical to that sought to be barred. For these reasons, we think it clear, that the possession of Mrs. Bell could never give her a title as against her husband. Suppose it were admitted, that the possession of Mrs. Bell, under a claim of title in herself, would vest her with a title; the title, when derived under the common law, would enure to the husband; and thus we would have the wife's antagonistic possession divesting the husband's title, which would by operation of law be revested in the husband.

We do not intend, in any thing we have said, to infringe the doctrine, that in equity the wife is deemed, as to her separate estate, a femme sole. It may be that, if a wife were in possession of property, claiming openly that it was conveyed to her as a separate estate, so as to exclude the husband's marital rights; and if she had continued to possess and enjoy the property, under such claim of it as a

separate estate, for more than twenty years, the law would presume, against the husband, that the claim was founded on a valid conveyance creating a separate estate. In a court of equity, the wife is allowed to assert her claim to a separate estate in antagonism of her husband's rights. But those principles can not aid the charge given. It raises the presumption, not upon the fact of the long-continued assertion by Mrs. Bell of a claim that the slaves were conveyed to her as a separate estate, but upon the fact that she was deserted by her husband, and claimed and possessed the slaves "as her own individual property." There is a clear distinction between the claim of a separate estate, created in such a manner as to exclude the husband's marital rights, and a naked claim of title in the wife against the husband. A wife may claim that a separate estate was vested in her. She can not claim that she holds property in possession adversely to her husband, except upon the ground that it is a separate estate; for her possession, except so far as chancery recognizes her right to hold a separate estate, and confers upon her, in reference to such estate, the privileges of a femme sole, is the possession of the husband. The possession by Mrs. Bell, claiming that the slaves belonged to her, and that she held them adversely to her husband, no matter how long, could never avail. An adverse possession, or an antagonistic enjoyment, for twenty years, may create the presumption of a title, in favor of persons *sui juris.* It never can create the presumption of a title in the wife, clothed with the quality of an exclusion of the husband's marital rights. If the absurdity could be conceived, of a wife's holding adversely to her husband, what reason or authority is there to support the position, that she thereby not only acquired a title, but a title of such a character as to exclude the husband?

There was no evidence conducing to show that Mrs. Bell ever claimed to hold the slaves under any conveyance which created a separate estate. The court, therefore, erred in refusing the charge asked by the defendant, as well as in the charge given.

Reversed and remanded.