# Tumlin, *et al. v.* Tumlin, *et al.*

### Partition or Division.

(Decided December 2, 1915.　70 South. 254.)

1. **Lost Instruments; Execution; Lost Record; Presumption.**—Where it appears that an instrument attempting to create a trust was executed and delivered, but that it had been destroyed, the presumption is that it was executed in the manner and form efficacious to carry out the trust.

2. **Evidence; Admissions; Pleading.**—Although the notary before whom a pleading was sworn to, did not, under the common law, have authority to administer oaths generally, yet where the pleading had been filed in court as a verified pleading, it is a solemn admission of the facts therein recited, and admissible against the pleader in a subsequent action.

3. **Same; Records; Operation and Effect.**—To make a verified pleading effective as against the pleader in a subsequent action, it is not necessary that the pleader should have been subject to perjury if his oath was false, but only that he intended solemnly to affirm the averments therein.

4. **Same; Estoppel.**—Where, in a former action, one of the parties verified a pleading before one not authorized to administer oaths generally, and the matter pleaded was not a necessary element of a defense, he is not estopped thereby in a subsequent action to deny any admission therein, but the pleading is admissible to contradict his statements in the subsequent action.

5. **Evidence; Deeds; Delivery.**—Since a deed does not, of itself, import delivery, parol evidence is admissible upon the question of the delivery of the deed.

6. **Evidence; Admissions Against Interest.**—In the absence of motive or misrepresentation, declarations in disparagement of proprietary interests are admissible against the declarant and those claiming in privity with him, especially where at the time of the declaration the declarant was in possession of the land.

7. **Same; Documents; Failure to Produce.**—Where one party seeks to prove a transfer of interest in land to his ancestor, no presumption of fraud

arises out of a failure to produce or require the production of the original transfer, where it was presumptively in the possession of the other party.

8. **Vendor and Purchaser; Bond for Title; Transfer.**—The evidence examined and held sufficient to show the transfer of a bond for title to land.

9. **Mortgages; Equitable; Bond for Title; Transfer.**—Where A and B were husband and wife, and A owned a bond for title to land, and he transferred it, together with property of B, to secure a debt owing to C, and at the same time C agreed to transfer the bond to B on payment of the debt, but the transfer so required was not made until after the discharge of the debt, persons claiming the land through A could not recover; the transfer of the bond having created an equitable mortgage and trust in C for B, effective from the date of the original transfer and agreement, and not from the date of the discharge of the debt.

10. **Frauds; Statute; Operation.**—The statute of frauds cannot be invoked to defeat the rights which parties intended to create by instruments in writing which failed to accomplish that purpose.

11. **Husband and Wife; Adverse Possession.**—Title cannot be acquired by one spouse by adverse possession against the other.

12. **Property; Conveyance; Passing Title.**—Title to realty cannot pass by a mere consent of one party in interest that the will of another devising the land shall operate.

13. **Same.**—An offer to convey by the vendor under a contract to the original vendee when such vendee has transferred his interest in the property has no effect upon the rights of the real party in interest.

APPEAL from Cherokee Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Jerry F. Tumlin and others, against Julia C. Tumlin and others, for partition of land, or for a sale for division. From a decree for respondents, complainants appeal. Reversed and remanded.

JOHN T. NORRIS, WILLETT & WILLETT, and MERRILL & WALKER, for appellants. GOODHUE, BRINDLEY & WHITE, KNOX, ACKER, DIXON & STERNE, and W. B. HARRISON, for appellee.

SAYRE, J.—This bill was filed by appellants for a partition, or, in the alternative, for a sale for division of a tract of land in Cherokee county. Appellants claim that the land was the property of Sarah Tumlin, their grandmother, and that an undivided interest descended to them through their father. Appellees claim to own the entire fee under the will of their father, Thomas Tumlin, whose wife, Sarah Tumlin was. The will disposed of testator's estate by a general devise to these appellees, his daughters. It excluded these appellants, who are the chil-

dren of a son, then deceased, from any part in the estate on the recited ground that they were already better provided for than would be appellees by the devise. The broad issue proposed by the pleadings and upon which the litigation in this cause has been fought out is as follows: Was the land in controversy the property of Thomas Tumlin at the time of his death, or did it belong to his wife, Sarah? No partial equities have been set up on either side, and the parties, though their contentions would give a hard aspect to the result in any event, have very correctly, so far as we can see, treated the issue thus presented as relating to the undivided and unincumbered ownership of the property in question by one ancestor or the other and as one to be properly determined by reference to the ownership of a certain contract of sale or bond for title to the history of which we will presently come. The record, which has been made up in this way, presents no substantial grounds for a different treatment, and we have therefore considered only the broad issue stated above.

In 1872, A. R. Wright, the then undisputed owner of this land, entered into an agreement for its sale to Thomas Tumlin and Reynolds Cantrell. Wright took notes for the entire purchase money, executing and delivering to the purchasers a bond for title. In 1876 Cantrell conveyed his interest to Tumlin. On March 15, 1881, Tumlin, to secure an account made and to be made with Ford, Glover & Hight, of Rome, Ga., executed and delivered to them a written transfer of his bond for title. At the same time Ford, Glover & Hight agreed in writing that, when such account or other indebtedness of Thomas Tumlin should be settled or paid off, then the bond was to be transferred back to him. On January 9, 1883, Ford, Glover & Hight, on Tumlin's request, executed and delivered to him a paper writing in words and figures as follows: "On the 16th day of March, 1881, Thomas Tumlin transferred to us a certain bond for title, made by A. R. Wright to said Thos. Tumlin and Reynolds Cantrell, said bond dated on the 16th day of January, 1872. Now, so soon as pecuniary note made by Mrs. Sallie Tumlin to us on this day for the sum of twenty-five hundred and seventy-seven and 60-100 ($2,577.60) dollars to become due November 1, 1888, is paid, and when all accounts hereafter to be contracted by Mrs. Sallie Tumlin with us are paid, then we bind ourselves to reassign the

said bond to her. This agreement is made in settlement of all contracts heretofore made in reference to the assignment of said bond and all our said agreements heretofore made are hereby canceled, January 9, 1883."

(1) On the face of this instrument as it appears in the record before us there are some errors in the reference, but the bond for title to which the foregoing agreement relates is the bond made by Wright in 1872, and was the only evidence Tumlin had of his interest in the land in controversy. This instrument purports to have been executed in the presence of an attesting witness, and was found among Tumlin's private papers after his death. After the date of its execution the account on the books of Ford, Glover & Hight was made to run against Mrs. Tumlin. At that time Colonel Tumlin's affairs in this state were somewhat involved, and he was surety on an executor's bond in Georgia from which, probably, he anticipated trouble. Mrs. Tumlin enjoyed the affection and respect of her family and friends, and had inherited a considerable property in Georgia; but she was illiterate, and appears to have given no attention to affairs outside her household. She appears, indeed, to have committed her property and her business affairs to the management of her husband, doing whatever he suggested in the premises. At any rate, it is quite plain on the evidence that all transactions with Ford, Glover & Hight were managed by Tumlin for his own purposes, and that some considerable part—just how much does not appear—of the money advanced by them to him was applied to the purchase-money debt due to Wright. In the course of these transactions he spoke to Ford, Glover & Hight of the land in question as the property of his wife. In 1887 the indebtedness to Ford, Glover & Hight was settled; Mrs. Tumlin contributing to the settlement by making a deed of land owned by her in Bartow county, Ga. At the same time, according to the testimony of Glover, his firm executed a transfer of the bond for title to Mrs. Tumlin, and delivered the same, along with the bond itself, to Tumlin. The original of this transfer has not been produced, but, if the case in this regard rested upon the unsupported testimony of Glover, no sufficient reason could be assigned for doubting that some such paper was, in fact, executed and delivered as we have stated, and the presumption must be that it was executed in the manner and form efficacious to carry

out the trust upon which Ford, Glover & Hight held it, viz., that, upon the payment of the debt for which it was held as security, it would be assigned to Mrs. Tumlin. And we must assume, since it was the duty of Ford, Glover & Hight to make a transfer, including delivery, to Mrs. Tumlin, and since nothing to the contrary appears, that the delivery was made to Thomas Tumlin as agent for his wife and for her use and benefit.

Afterwards Tumlin remained in possession of the land until February, 1906, when he died. During this period he paid the balance due to Wright, resided upon the property with his family, paying taxes, cultivating the land, receiving the proceeds of the crops grown, and in all respects managing it as his own, and it may be conceded that he intended that the land in suit, as well as other property he owned, should pass under the general devise in his will. Within a few months after his death Mrs. Tumlin died, and since then appellees have been in possession claiming under his will. In the meantime—that is, in 1893 —the personal representatives of Wright, then deceased, recovered a judgment against Tumlin in the superior court of Floyd county, Ga., for the balance due on the purchase price of the land here in suit. Thereupon a suit was brought in Mrs. Tumlin's name against said representatives on certain promissory notes made by Wright, payable to Berrys & Co., and assigned to Mrs. Tumlin. Wright's representatives then filed a petition in the Georgia court against the Tumlins, representing that the Berrys & Co. notes had been credited on the purchase-money indebtedness, and praying an injunction against the further prosecution of Mrs. Tumlin's suit. Answering the petition for an injunction in behalf of himself and wife, Tumlin set forth the history of his purchase from Wright, and averred that: "On the 15th day of March, 1881, said Thomas Tumlin transferred said bond to the firm of Ford, Glover & Hight, and on the 5th day of March, 1887, said Ford, Glover & Hight transferred said bond to the defendant Sarah Tumlin."

To the answer was attached an exhibit in the following language: "Rome, Ga., Mch. 5, 1887. We transfer the bond made by Augustus R. Wright to Thomas Tumlin, dated 16th day of January, 1872, to a tract of land in Cherokee county, Ala., to Mrs. Sarah Tumlin, for value received, without any recourse on us in any way whatever. This March 5, 1887. Ford, Glover & Hight."

(2) This answer purported to have been sworn to before a notary public in the state of Georgia. A copy of the record of the proceedings in the Georgia court, duly certified under the act of Congress, was offered in evidence. Appellees contend that the record proves nothing in this cause. In our judgment, it competently shows a solemn admission by Tumlin of the fact of the execution and delivery of a transfer by Ford, Glover & Hight to Mrs. Tumlin and the terms of that transfer.

(3) It is true that the powers of notaries at the common law were confined to commercial transaction, that the common law is presumed to be of force in Georgia, and that we are not informed by any evidence, specifically taken on the point, that notaries in Georgia have the power to administer oaths generally. But the answer was offered to the Georgia court, not as a mere suggestion of counsel, but as a pleading verified under oath. It may be that Tumlin's verification of the answer served no purpose in that cause, that it gave him no better standing in court than an unverified pleading would have given him, and that in this hypothetical state of the law of Georgia, Tumlin tendered to the court a pleading which the court there at a glance would have determined to be, in fact, not what it purported to be. But we do not presume that such was the case. We presume that, when Tumlin went through the form of taking an oath, he acted deliberately and with a purpose. The question is, not whether he failed to subject himself to the pains and penalties of perjury if his oath were false, but whether he intended solemnly to confirm the averments of the answer which he filed for the consideration of the Georgia court.

(4) This view of the matter makes it necessary to consider the answer, not as a technical estoppel—it does not amount to that, because the admission here in point, though relevant in an evidential way to the defense there interposed, was not a necessary element of the defense, and the result of that litigation shows that the defendants there took nothing by it—but it must be considered as a competent admission of fact deliberately and solemnly made under circumstances inviting, and intending to invite, credit on account of the personal integrity of the defendant in that proceeding, and hence entitled to great weight in the present cause against those who claim in his right.

(5, 6) Generally it may be said that, as a deed does not show upon its face a delivery, evidence thereof must ordinarily come

[Tumlin, et al. v. Tumlin, et al.]

from without. Hence parol evidence thereof must necessarily be admitted when the question of delivery arises.—1 Dev. Deeds (3d Ed.) § 266. And in general declarations in disparagment of proprietary interest when no motive for misrepresentation appears are entitled to consideration against the declarant and those claiming in privity with him.—*Barfield v. Evans,* 187 Ala. 579, 65 South. 928. If the declarant is in posssession, that is perhaps an additional reason for extending credit to his self-disowning statements on an issue of disputed ownership.—*Payne v. Crawford,* 102 Ala. 387, 14 South. 854, and cases there cited.

(7) As for the contents of the transfer to Mrs. Tumlin, shown by the Georgia transcript, no presumption of fraud or sinister motive on the part of appellants can arise out of their failure to produce or require production of the original. If extant at the time the testimony was taken, presumptively it was in the possession of appellees, for they had possession of Tumlin's papers, and produced his other papers bearing upon the question at issue. Nor was there any question but that the answer was filed, nor any room for uncertainty or confusion as to the terms of the transfer shown by the admission and set out in verbis in the answer. In these circumstances, conceding that the objection was made in good time, the rule requiring notice to an adversary to produce the original of a paper in his possession does not apply.—*Sally v. Capps,* 1 Ala. 121; *Barnett v. Wilson,* 132 Ala. 375, 31 South. 521; 2 Wigm. Ev. §§ 1255, 1256, and cases cited to notes under the last section.

(8) On the evidence as a whole we have no doubt that Thomas Tumlin on valuable consideration executed and delivered to Ford, Glover & Hight a written transfer of the bond for title he had received from A. R. Wright, intending thereby to pledge his entire equitable interest in the property purchased from Wright; that subsequently, on Tumlin's request and on new and valuable consideration moving from Mrs. Tumlin, Ford, Glover & Hight contracted in writing, expressing the consideration, that the bond for title should be transferred to his wife, intending thereby to vest in her his entire equitable estate in the land, and that this contract and final transfer of the bond for title, when performed, were none the less effective and binding as between him and her, though, perchance, the evidence leaves the way open for the possible inference that he on his part may have had, in addi-

tion to the procurement of new funds and supplies on the credit of Mrs. Tumlin, the purpose to put the property beyond the reach of his creditors. Whatever may have been his intention in this last respect, the contract having been made and executed on the consideration mentioned, it does not lie in the mouth of appellees, who have no better right than he had, to deny Mrs. Tumlin's right to its benefit.

(9) Appellees have urged with earnest insistence that Tumlin's original transfer of the bond for title to Ford, Glover & Hight amounted to an equitable montgage of the land, as doubtless it did (*Hays v. Hall,* 4 Port. 374, 30 Am. Dec. 530) ; that when Tumlin's debt was paid the equitable title was divested out of them and vested again eo instante in him, after which they had no title of any description which they could transfer to Mrs. Tumlin; and that their subsequent transfer to her, even though made with the consent and on the procurement of Tumlin, was void under the statute of frauds.

It appears from the transcript of the record that on March 4, 1887, one day before the transfer by Ford, Glover & Hight to Mrs. Tumlin, the firm executed the following paper writing: "The transfer of the bond made by Judge A. R. Wright to Thomas Tumlin and Reynolds Cantrell on January 16, 1872, is canceled. Said transfer made the 15th March, 1881. All indebtedness of said Tumlin as principal and agent having been settled."

Before that, on January 9, 1883, Ford, Glover & Hight, already having what title to the bond and the land Tumlin's written transfer of the bond could vest in them, had given to him the agreement in writing which has been set out above, whereby they agreed that the bond for title, upon the payment of the obligation then assumed by Mrs. Tumlin, should be transferred to her. This was a contract for the benefit of Mrs. Tumlin, the consideration for which, as the contract shows, moved from her to Ford, Glover & Hight and to Tumlin as well. The contiguity in time of those two papers and the obligations of the parties would indicate that Ford, Glover & Hight's cancellation of the transfer to Mrs. Tumlin were executed as parts of one transaction, the intention of which was to give Tumlin a receipt in full against the previous separate indebtednesses of himself and his wife, and transfer the bond to her, to whom in equity and good conscience it already belonged. But, whatever the real in-

[Tumlin, et al. v. Tumlin, et al.]

tention of the parties may have been, conceding that this cancellation of the original assignment, unaffected by the agreement of January 9, 1883, would have constituted a valid reassignment to Tumlin, so far as concerned the interest of Tumlin in the bond for title, with which the parties to all these transactions were dealing as with an interest in the land itself, cancellation had long before been accomplished by the agreement referred to, which operated as a new assignment, or, to speak more accurately, perhaps operated to ingraft new conditions, a new trust, upon the original assignment, so that, after the payment and discharge of the debt and obligation then incurred by Mrs. Tumlin on the faith of the promise to reassign to her, the assignee held the bond in trust for her, and had no moral or legal right, after her debt was paid, to dispose of it otherwise than by an assignment to her as the contract provided. To give effect to this contract no new assignment was necessary. Thereafter the original assignment to them and the new assignment operated together to create as between Mrs. Tumlin and Ford, Glover & Hight the relation of mortgagor and mortgagee in an equitable mortgage of the interest in the land evidenced by the bond for title. The legal title to the bond, the symbol of the ultimate equity in the land to which these transactions looked, all along remained in Ford, Glover & Hight, affected by a trust the obligation of which they could not avoid, while the legal title to the land itself was, and for that matter still is, in Wright or his heirs, for they have never executed a deed to any one.

(10) But, if it should be conceded that the so-called cancellation of March 4, 1887, was effective to revest the title to the bond in Tumlin, notwithstanding the contract of January 9, 1883, still the agreement was made, was supported by a consideration moving from Mrs. Tumlin, and, even though it was not signed by Tumlin, we do not see that the statute of frauds should operate to deny any of the rights the parties thereby intended to create. The facts are undisputed, and the equity of the situation is plain. Tumlin's participation in the arrangement, under all the circumstances brought to the knowledge of the court, amounted to a clear representation that he intended to stand by the agreement, and to allow him or those standing in his place now to deny the legal sufficiency of the contract in any respect would not only deny rights his agreement was intended

[Tumlin, et al. v. Tumlin, et al.]

to confer, but would inflict an unjust and unconscionable injury and loss upon Mrs. Tumlin and those who have succeeded to her rights. That would be a perversion and an abuse of the statute of frauds.—Browne, St. of Frauds, § 457a. For this reason, and because the parties, though intending to direct the course of an equitable interest in land which would ultimately control the legal title, were dealing directly and immediately with the contract upon which their interest in the land depended and still depends, "a trust in a contract to convey land may be proved by parol; so also a trust in a mortgage."—Browne, St. of Frauds, § 82.

(11-13) The transfer to Mrs. Tumlin, proved to have been made as it ought to have been, vested therefore in her, upon payment of the balance of the purchase money to Wright, a perfect equity, leaving only the naked legal title to the land in the heirs of Wright. Nothing is shown to have occurred subsequently to change this status of ownership, except that Mrs. Tumlin has died leaving appellants and appellees joint heirs of her property. True, Tumlin remained in possession, exercising acts of ownership, and claiming in a general way to own the land. But this possession was not adverse to his wife, nor did it put upon her the burden of asserting her rights in a court of justice; for she, too, was in possession. The property of the wife cannot be vested in the husband by such means. And, if their joint adverse possession after payment of the purchase money continued for a sufficient length of time to divest Wright of his legal title, such possession was for the benefit of the wife, and, without more, vested title in her. True, Mrs. Tumlin, after the death of her husband, is shown by the evidence for appellees to have expressed satisfaction with the dispositions of his will. But title to realty cannot be made to pass in that manner, as the cases cited by appellees abundantly show. True, also, Judge Wright wrote to Col. Tumlin in 1897 offering to make a deed to him when called for, but there is nothing to show he understood the change in the ownership of his contract to convey, and, whether he understood or not, his offer could not affect the property right as between Tumlin and his wife. These circumstances, to which appellees refer, have produced a certain inclination to look for some principle that would leave undisturbed a status of property right which Tumlin seems to have considered fixed and in which

his wife after his death appears to have expressed her acquies-
cence; but we must discriminate between casual appearances and
the results of fundamental principles of law; and in this case,
upon consideration of facts established without substantial dis-
pute and of what seems to be the applicable settled rules of law
and policy governing the transmission of real property, we have
been unable to settle upon any definite legal principle that would
suffice to avoid the conclusion that the beneficial ownership of
the property in controversy was in Mrs. Tumlin at the time of
Col. Tumlin's death, and that it remained in her until her death
shortly afterwards, between which event and the filing of the
bill in this cause there has been no lapse of time sufficient to
work a change nor has there arisen any cause of estoppel against
appellants. We have found, therefore, no sufficient reason for
disturbing the status of ownership and title created by the trans-
fer of the bond for title to Mrs. Tumlin.

In order that a decree may be entered and executed in ac-
cordance with these views, the decree appealed from will be re-
versed, and the cause remanded to the chancery court for such
further orders and decrees as may be necessary.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.