(89 South. 25)

### GRAHAM et al. v. GRAHAM et al.
(3 Div. 383.)

(Supreme Court of Alabama. Jan. 22, 1921. Rehearing Denied May 5, 1921.)

1. **Payment** ⊜⟿66(1)—**It is presumed husband paid debt to wife, where evidence did not show possession of mortgaged property was held for her.**

Where a husband executed a trust deed to secure a debt owing to his wife, but remained in possession with his wife for more than 30 years after the maturity of the debt, and until his death, and there was no evidence to show possession of the land by the wife, or by the husband for the wife, there is a presumption that the mortgage debt and deed were extinguished after the lapse for more than 20 years after maturity.

On Rehearing.

2. **Life estates** ⊜⟿15(1)—**Rents should be apportioned between reversioners and grantees of life tenant.**

Where a life tenant dies pending a lease made by himself, the rent accruing under the lease for the year in which he died is to be apportioned between the assignees of the rent and the reversioners.

McClellan and Somerville, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by D. M. Graham and others against Peter H. Graham and others, for the sale of certain lands for division and for other purposes. From a decree denying the claim of respondents to a portion of the land, and directing its sale for division, respondents appeal. Affirmed in part, and in part reversed and rendered.

The bill of complaint is filed by several of the children and legal heirs of Mildred A. Graham, primarily to secure a sale of certain lands lying in Autauga and Mont-

gomery counties, of which it is alleged she was· the owner at the time of her death in 1908, for distribution among the legal heirs, including the respondents, Peter H. Graham, William A. Graham, Jr., and Mary F. Hastings. The McQueen-Smith Farming Company is also made a party respondent as claimant of a plat of 80 acres of the Autauga land. There is no controversy as to the Montgomery county land but Peter H. and William A. Graham, Jr., claim the Autauga lands under title by conveyance in severalty from their father, William A. Graham, Sr., and the said Farming Company claims under a deed from Peter H. and William A. Graham, Jr.

. Complainants' claim of title in their mother, Mildred A. Graham, is based upon the following facts alleged in the bill: On October 13, 1875, William A. Graham, Sr., was indebted to his wife, Mildred A. Graham, in the sum of $10,000, for money received by him in 1870 (after their marriage in 1862) as a part of her separate estate by inheritance, which money he had converted to his own use. To secure said debt he executed, on October 13, 1875, a mortgage on these lands in the shape of a deed of trust to Leonard Sims, as trustee for Mildred A. Graham, to have and to hold for her sole and separate use. This deed of trust con- ·tained the usual conditions for defeasance, with the right of entry and power of sale in case the debt secured was not paid at maturity, January 1, 1876. William A. and Mildred A. Graham, occupied the 640 acres in Autauga county as their homestead, and they lived on the place together in the relation of husband and wife continuously from the execution of the mortgage in 1875 until the death of Mildred A. Graham in 1908. The mortgage debt was never paid, nor was the mortgage ever foreclosed. The foregoing allegations of the bill were proven without dispute.

With respect to the relation of Trustee Sims to the mortgage deed and to the lands conveyed, and with respect to possession, use, and control of the land as between husband and wife during the period of their joint occupation down to 1908 the bill alleges in the alternative several distinct and conflicting statements of facts, from each of which Mildred A. Graham's ownership of the land is deduced as a legal conclusion and also as a conclusion on facts. In view of the evidence, and of the theory upon which the court decreed relief, it is not necessary to state more than two of the alternatives: (1) That the nominal trustee, Sims, never accepted the trust, and never in any way acted thereunder, and that Mildred's husband, William A. Graham, Sr., held possession of the land, after the law day of the mortgage, as her statutory trustee, until the trusteeship was abolished by the act

of February 28, 1887, and thereafter she held in her own right until her death, being in the meantime recognized by her husband as owner, and that his equity of redemption was thereby extinguished; (2) by the last amendment to the bill, made to meet the proof as it apparently developed, it is alleged that after the law day of the mortgage Mildred A. had the actual possession in her own right, ·and so kept it until her death, her husband being, as to his occupation and control of the place, only her agent, and recognizing her paramount right and title. After her death in 1908 it is alleged that he held as tenant by the curtesy, and that neither his possession nor that of his grantees, the respondents, was adverse to complainants until after W. A. Graham's death in 1917.

The several answers of the respondents admit the execution of the mortgage or deed of trust to Mildred A. Graham but deny that it remains unpaid, and deny all the allegations upon which title is imputed to her, and set up title in themselves by purchase from William A. Graham, Sr., who it is alleged was the owner of the title in possession until after the death of Mildred A., which was never divested by said mortgage, or by anything done thereunder.

The testimony as to the relation of William A., Sr., and Mildred A. to this land, in possession, use, and claim, is sharply conflicting, and is for the most part drawn from interested witnesses. The trial judge overruled demurrers to the bill as a whole and to its several alternative phases, and on final hearing decreed that the title was in Mildred A. and decreed the relief prayed for.

W. P. McGaugh, of Prattville, and Eugene Ballard, of Montgomery, for appellants.

There is no evidence adduced showing the delivery of the mortgage, and this strikes at the root of plaintiff's claim. 65 Ala. 340. By its terms the mortgage imposed duties on the grantee, and hence no presumption arises that there was a delivery or acceptance of the trust. 28 Amer. & Eng. Enc. of Law, 896. The mortgage expressly provides for an active trusteeship, excluding any predicate for the operation of the statute of uses. Section 3408, Code 1907, and cases cited. The requisite proof to put title in Mrs. Graham was not produced. 2 Perry on Trusts, § 602, e; 2 Jones on Mortgages, 1156, 1157; 3 Pom. 1193; 171 Ala. 498, 55 South. 164; 79 South. 450. The mantle of repose should be thrown over the ancient transaction, and the presumption indulged that the mortgage had been paid. 176 Ala. 276, 58 South. 201; 80 Ala. 296; 171 Ala. 108, 54 South. 618, Ann. Cas. 1913A, 1107; 171 Ala. 498, 55 South. 164; 1 Ala. 653; 33 Ala. 18; 114 Ala. 63,

21 South. 483; 202 Ala. 56. The authorities find it difficult to conceive the status of an adverse possession existing as between husband and wife, where there is joint occupancy and community of possession. 120 Ala. 311, 25 South. 209; 37 Ala. 542, 79 Am. Dec. 73; 69 Ala. 373, 44 Am. Rep. 519; 195 Ala. 591, 71 South. 411; 80 Ala. 296; 1 Cyc. 1030–1032.

W. A. Gunter and James J. Mayfield, both of Montgomery, for appellees.

Having admitted the execution of the mortgage or deed of trust, this includes delivery. 125 Ala. 53, 27 South. 844; 10 Ala. 76; 65 Ala. 336. At the time of the conveyance, the husband could not convey to the wife, and hence they took the only proper way of making the transfer. 76 Ala. 418; 163 Ala. 390, 50 South. 1005. The effect was to pass the equitable separate estate to the wife, free from all the claims of the husband and his creditors. 76 Ala. 599; 57 Ala. 127; 101 U. S. 225, 25 L. Ed. 908. Both the legal and equitable title was in the wife. 148 Ala. 211, 42 South. 563, 121 Am. St. Rep. 63. On the question of adverse possession as between the husband and wife, see 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38; 110 Ala. 640, 20 South. 130; 109 Ala. 430, 20 South. 136. Inability of a debtor to pay is confident to show that he has not paid. 167 Ala. 291, 52 South. 414. As between the mortgagor and the mortgagee the presumption is that it passes the estate. 117 Ala. 538, 23 South. 530, 67 Am. St. Rep. 189.

PER CURIAM. On a former appeal in this case (Graham v. Graham, 202 Ala. 56. 79 South. 450), it was held, upon the allegations of the original bill, that the deed of trust executed by William A. Graham, Sr., in 1875, to his wife, Mildred A. Graham, through the medium of Sims, as trustee, had never ripened into a title in Mildred A., but remained a mortgage security merely, the payment or satisfaction of which would be presumed, as a matter of law, from the lapse of more than 20 years after the law day thereof without any countervailing recognition of the existence of the debt, by payments thereon or otherwise, on the part of the mortgagor husband. From this view of the allegations of the bill, it resulted that the action of the trial court in overruling the demurrer to the bill was held erroneous, and the demurrer was sustained as to both alternatives of the bill, viz., as a claim of title in the heirs of Mildred A., and as a claim for an unpaid debt secured by the mortgage in question.

The cause was submitted on the amended bill and exhibits and the depositions of witnesses and the trial court decreed that the fee-simple title to the Autauga farm was in Mrs. Graham at and before the time of her death, under the operation of the deed of trust and actual possession thereunder by the wife.

[1] A majority of the court—Chief Justice ANDERSON and Justices SAYRE, GARDNER, and BROWN—are of the opinion that the evidence fails to show that the possession of the land was held by Mrs. Graham, or by her husband for her, and that the principles of law stated by the court on the former appeal are still applicable and of controlling effect. The conclusion is that the mortgage debt and title of Mrs. Graham were presumptively extinguished by the lapse of more than 20 years after the law day, without recognition thereof by the mortgagor, and that at the time of Mrs. Graham's death in 1908 the fee-simple title was vested in Mr. Graham, her husband.

The result is that the Autauga farm property is not subject to partition in favor of the heirs of Mrs. Graham, and in so far as the decree of the trial court grants relief as to that property it is erroneous, and must be reversed, and a decree will be here rendered adjudicating the title thereto in favor of the alienees of William A. Graham, Sr., viz. Peter H. and William A. Graham, Jr., and those claiming under them.

In so far as the decree and orders of the trial court are operative upon the Montgomery farm, they will be affirmed.

Reversed and rendered in part, and affirmed in part.

THOMAS, J., not sitting.

McCLELLAN, J., is of the opinion that the evidence shows such a possession in Mildred A. Graham as to rebut the presumption of payment of the mortgage debt, and so to remove the case from the operation of the principles and conclusions of law held as controlling on the former appeal on the pleadings. He holds that the mortgage is still of force, and would grant relief under the alternative aspect of the bill, which seeks relief by its foreclosure.

SOMERVILLE, J. (dissenting). I think that the bill as now amended, in its primary alternative, contains allegations of fact sufficient to show a paramount legal title in Mildred A. Graham at the time of her death, and in her legal heirs thereafter, and that the evidence sustains the decree granting relief in that aspect of the bill. The following principles and considerations are pertinent to the conclusion I have reached with respect to the title involved:

1. Nothing appearing to the contrary, it will be presumed that the $10,000 of the wife's property derived from her father's estate, and appropriated by the husband to his own use in 1871, was her statutory estate. De Bardelaben v. Stoudenmire, 82 Ala.

574, 2 South. 488; Bolman v. Overall, 86 Ala. 168, 5 South. 455.

2. This estate could not, by any contract or agreement between husband and wife, be converted into an equitable separate estate, free from the trusteeship and claims of the husband. Hence the mortgage of 1875, though it in terms conveyed the Autauga land, and its proceeds, if sold, to the sole and separate use of the wife, was not effective to that end, and the mortgaged land became, as to her interest therein, her statutory estate. Farrior v. N. E. M. & S. Co., 92 Ala. 176, 9 South. 532, 12 L. R. A. 856; Loeb v. McCullough, 78 Ala. 533; Coleman v. Smith, 55 Ala. 368.

3. In order to vest title and authority in Leonard Sims, named in the mortgage as the grantee in trust for the wife, it was necessary that he should accept the trust, and such acceptance would be readily implied, especially after the lapse of many years, from circumstances having but very slight probative value. Kennedy v. Winn, 80 Ala. 165; 20 R. C. L. 1191, § 28. In the instant case, it does not appear that Sims ever even knew of the existence of this mortgage, and it affirmatively appears that he never did a single act in recognition of his trusteeship, or in relation to its subject-matter, and that he died within about three years after the execution of the mortgage. It must be held, therefore, that such title and power as were granted by the deed never vested in Sims as trustee.

4. It is a favorite maxim of equity that "no trust can be permitted to fail for want of a trustee." Blakeney v. DuBose, 167 Ala. 627, 637, 52 South. 746, 749; Whitehead v. Whitehead, 142 Ala. 165, 37 South. 929. Hence, in cases like this, equity will deal with the trust conveyance in such wise as to give to it the operation and effect which the grantor intended it should have. Michan v. Wyatt, 21 Ala. 813, 828.

5. Under the statutes in force in this state down to the Married Woman's Act of 1887 (Code 1852, § 1983; Code 1876, § 2706), the statutory separate estate of the wife was vested in the husband, as her trustee, with the right to manage and control without accountability for the rent, income and profits. De Bardelaben v. Stoudenmire, 82 Ala. 574, 2 South. 488. Hence, by force of the statute, this mortgage to the use of the wife vested in the husband, as trustee, the legal title to the land, with all the incidental rights of possession, control and use, subject, of course, to the equitable rights of the husband, as mortgagor, after the law day of the mortgage, January 1, 1876.

6. After the law day of the mortgage, the husband, as mortgagor, had no right, as against the wife or her trustee, to retain the possession of the land. In that capacity he had nothing but an equity of redemption, cognizable only in a court of equity, and only for the purpose of effecting such a redemption. Toomer v. Randolph, 60 Ala. 360; Coyle v. Wilkins, 57 Ala. 108. It is true that this court has occasionally said, as in Baldwin v. Hatchett, 56 Ala. 461, that a mortgage is nothing but a security for a debt, which was true enough for the purposes of that case. That a mortgage title after default is thus qualified is refuted by a long line of cases decided by this court. Fields v. Clayton, 117 Ala. 538, 23 South. 530, 67 Am. St. Rep. 189.

7. "The universal principle is that, when two persons are in the joint possession of property, the title being in one, the law refers the possession to the title." Newbrick v. Dugan, 61 Ala. 253; Lanoir v. Rainey, 15 Ala. 667; Governor v. Campbell, 17 Ala. 566; Bragg v. Massie, 38 Ala. 89, 79 Am. Dec. 82; Scruggs v. Decatur M. & L. Co., 86 Ala. 173, 5 South. 440; Wells v. A. M. Co., 109 Ala. 430, 444, 20 South. 136; Stiff v. Cobb, 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38. This means, of course, the legal title, since an equitable title never carries the right of possession as against the legal title.

8. On January 1, 1876, the husband, as mortgager, had but an equity in the land—a right to redeem, enforceable only in a court of equity upon bill filed for that purpose. As statutory trustee for his wife, he held a perfect legal title, with the right of possession and enjoyment. Assuming that there is no legal evidence to show an ostensible change in the character of the husband's possession after the law day, will the law presume that he continued to hold as mortgagor, or will it presume that he thereafter held as statutory trustee for his wife? The answer to this question, if it affirms the latter alternative, is decisive of the controversy as to title presented by the bill and answer. As already noted, the possession, as between two distinct individuals in joint occupation, is always imputed to the individual with the legal title. If the possession be in a single individual, who occupies two distinct relations to the land, the one founded upon a mere equity to redeem, without any possessory right, except as to strangers, and the other upon a perfect legal title, with an absolute right of possession, upon every principle of logic and propriety the same rule of law is applicable as if the possessor were two distinct individuals; and the legal effect of such a possession, if not distinctly repudiated, is a holding as trustee under and by virtue of his legal title as such. In such a case a ceremonial livery of seisin by the mortgagor to himself, as trustee, was impracticable and unnecessary; and the legal effect of his deed, after the law day, was to pass both the property and its possession to the grantee or her statutory trustee. Code, § 3364. This conclusion is fortified and confirmed by a consideration of the legal and moral duty which attached to his office as trustee.

"It is a well-settled rule that, where a deed creates a separate estate in the wife, and appoints no trustee to hold for her [and the rule must be the same where a nominal trustee has failed to accept such trust], the husband is the trustee, and in this capacity may protect, and, indeed, by every principle of *legal* and *moral* duty, is bound to protect the separate property of the wife against wrongs and injuries from strangers. He would be recreant to every duty which the law imposes upon him as trustee, if, when it was wrongfully or illegally taken away from his possession by a stranger, he did not use all legal means to recover and restore it." (Italics supplied.) Michan and Wife v. Wyatt, 21 Ala. 813, 828.

See, also, De Bardelaben v. Stoudenmire, 82 Ala. 574, 579, 2 South. 488.

If that was the nature and extent of the husband's duty as against strangers, a fortiori it would be his duty also as against himself.

9. After the law day of the mortgage, the possession of a mortgagee, without any recognition of the equity of the mortgagor, is presumptively hostile and adverse to him; and, if continued for 10 years, such a possession will extinguish the equity of redemption, and vest in the mortgagee a perfect title both legal and equitable. Coyle v. Wilkins, 57 Ala. 108; Byrd v. McDaniel, 33 Ala. 18; Love v. Butler, 129 Ala. 531, 30 South. 735; Dixon v. Hayes, 171 Ala. 498, 55 South. 164. From the application of this principle to the possession of the husband, as statutory trustee, during the period from January 1, 1876, to February 28, 1887, and his failure as mortgagor to assert his right of redemption, it must be concluded that that right was extinguished, and that a perfect and indefeasible title was vested in his wife. Humphries v. Terrell, 1 Ala. 650, 653. There seems to be a recognition of this potency of a husband's possession as statutory trustee, though the proposition was not decided, in Brackin v. Newman, 121 Ala. 311, 318, 319, 26 South. 3, Lide v. Park, 135 Ala. 131, 137, 33 South. 175, 93 Am. St. Rep. 17, and McLeod v. Bishop, 110 Ala. 640, 645, 20 South. 130.

10. On February 28, 1887, by force of the Married Women's Act of that date, the distinction between the statutory and the equitable separate estate of married women was abolished, and the husband's statutory trusteeship and other marital rights in his wife's property were terminated. Ramage v. Towles, 85 Ala. 588, 5 South. 342; M. & C. R. R. Co. v. Bynum, 92 Ala. 335, 337, 9 South. 185. It results in this case that the legal title vested in the husband, William A. Graham, Sr., as trustee for the wife, Mildred A. Graham, was, on February 28, 1887, vested in her sui juris, free from all claim and control of the husband.

11. Thereafter husband and wife jointly occupied the land until the death of the wife in 1908, a period of 21 years. If it were conceded that his possession during that period could have become adverse to her, yet "the conduct of the husband in occupying, managing, and operating land, the ostensible legal title to which was in his wife, as part of the farm on which they resided, must be referred to her title, and his adverse possession considered as her possession, in the absence of a contrary showing." 2 Corp. Jur. 75, § 55; Mygatt v. Coe, 152 N. Y. 457, 46 N. E. 949, 57 Am. St. Rep. 521. But it has been expressly declared by this court that, where a husband and wife are in joint occupation of her property, no claim or conduct on his part could be effective to set up an adverse possession against her so as to affect her title. Tumlin v. Tumlin, 195 Ala. 457, 466, 70 South. 254; Stiff v. Cobb, 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38.

12. But looking to the evidence in the record, and considering the testimony of only those witnesses who were competent under the statute (Code, § 4007) to testify as to statements by or transactions with the deceased husband and wife, whose estates are interested herein, I am satisfied that the husband, William A. Graham, Sr., recognized the ownership of his wife during her lifetime, and never disputed it at all until after her death in 1908. The fact that he supervised and managed the property in a general way, and assessed it for taxes in his own name, such acts being but a continuation of his old relationship as trustee, and in accord with the social and marital customs of the times, cannot, under the circumstances, be regarded as indicative of a claim of ownership in hostility to that of his wife. All this is in harmony with his expressed purpose to make his wife secure for the repayment of the money he owed her in 1876, in preference to other creditors, and his statements made in 1888, or at intervals thereafter, that it was her property, including his sworn testimony in a magistrate's court in 1906, 1907, or 1908, that the title was in his wife.

13. After the death of the wife in 1908, the husband held the property as tenant by the curtesy until his death in 1917, and under that tenure he could not hold adversely to the reversioners, the heirs of his wife, nor could he convey any right or title to others beyond the duration of his life estate. Pickett v. Pope, 74 Ala. 122; McLeod v. Bishop, 110 Ala. 640, 20 South. 130. Hence his conveyances of parts of the land to Peter H. and William A. Graham, Jr., in 1915 and 1916, respectively, gave to them a title which terminated with his death in 1917,

14. Upon his death in 1917, the estates vested in fee simple in the legal heirs of his wife, Mildred A. Graham.

15. The respondent McQueen-Smith Farming Company claims to own 80 acres of the land (the E. ½ of the N. W. ¼ of section 11, township 17, range 16) by virtue of a deed from Peter H. Graham and wife, executed

In 1915. Peter H. Graham claimed this tract under a deed from his father, William A. Graham, Sr., and also under a deed from Sallie G. Sims, executed on May 28, 1909, whose alleged title is deraigned from William A. Graham, Sr., and Mildred A. Graham, by their joint deed executed to Mrs. Sims on February 1, 1889. The evidence shows without dispute that Mrs. Sims never took nor held possession of this land, nor in any way interfered therewith, during the period of more than 20 years between her acquisition of title and her grant to Peter H. Graham, and that the grantors occupied and used the land as owners during all that time, without recognition of her right or title, if any she had. Thereafter the doctrine of prescription must be held as a bar to any assertion of title by her or her alienees. It results from what I have said that the McQueen-Smith Farming Company acquired the entire title to the tract only for the life of William A. Graham, Sr., and now own only the undivided interest of Peter H. Graham, as heir of Mildred A.

16. I am not satisfied from the evidence in the record that Peter H. Graham and William A. Graham, Jr., were indebted to their mother, Mildred A., at the time of her death, nor that they are chargeable with any sums of money received from her by way of advancements. In so charging those respondents, I think the trial court was in error, and in that particular the decree should be reversed and corrected.

17. The general rule of law is well settled that unaccrued rent follows the reversion, if not reserved or previously severed by the grantor, and there is no apportionment as to the respective periods of ownership during the term. But under the statute of 11 Geo. II, which is recognized as of force in this state, there is an exception in cases where a life tenant lessor dies pending a lease made by himself. English v. Key, 39 Ala. 113, 117; Price v. Pickett, 21 Ala. 741; 16 Cyc. 623; 16 R. C. L. 920, § 427, citing Watson v. Penn, 108 Ind. 21, 8 N. E. 636, 58 Am. Rep. 26. In the accounting for rents due or collected for the year 1917, an apportionment should therefore be made, having regard to the relative periods of ownership of the life tenant, William A. Graham, Sr., or his grantees, and the reversioners, the heirs of Mildred A. In this particular, also, the decree should be modified and corrected.

In my judgment the crucial and decisive principle in the case, which has been disregarded or overlooked by the majority of the court, is the presumption of law that the husband, William A. Graham, Sr., held possession after the law day of the mortgage, not as mortgagor and in his own right, but as statutory trustee for his wife, Mildred A., and that such possession, continued for 20 years, was as effective to extinguish an equity of redemption in himself as in a stranger. As to authority, the case of Brunson and Wife v. Brooks, 68 Ala. 248, is in principle conclusive. There a husband was in possession of land as tenant of his father for 9 years. His father then deeded the land to the tenant's wife, and she and her husband continued to occupy the premises together. It was held that the husband's continued possession was referable to his representative capacity as trustee, and was constructive notice to the grantor's creditors of her title, and the fact that prior to her title and his possession thereunder he was in possession as tenant of her vendor could not affect the application of this principle. This doctrine was reaffirmed in Patterson v. Kicker, 72 Ala. 406, where it was said:

"It is well settled that the possession by the husband of property belonging to the wife's statutory separate estate is referable to his representative capacity as trustee. The fact of a joint possession, therefore, cannot complicate the principle in the simplicity of its application."

And it was further said in Wortham v. Gurley, 75 Ala. 356, 361:

"The possession of her property by the husband, or by herself and husband jointly, when it is shown to be her statutory separate estate, is her possession; he being presumed to hold merely in his capacity of statutory trustee, with powers specially defined and strictly limited."

In the application of this rule it must be noted (1) that the law cast upon the husband, nolens volens, the possession of his wife's estate as mortgagee, after default; and (2) that the wife could not assert any possessory right in herself as against the husband's trusteeship. If she had sued in ejectment, as an ordinary mortgagee might, the suit would of course have failed. If he had attempted to deliver possession to her as mortgagee, the statute rendered the attempt abortive and futile. Bell v. Bell, 37 Ala. 536, 541, 79 Am. Dec. 73. While there might be a joint personal occupation of the property by husband and wife, there could be but one seisin, and that seisin the law attaches to the legal title, which was unquestionably in Mrs. Graham, through her trustee, after the law day of the mortgage.

But, wholly apart from the considerations to which I have adverted as decisive of the legal title to the mortgaged property in favor of Mrs. Graham, I am unable to assent to the majority view that the mere lapse of time, whether of 20 years or more, though without any recognition by the mortgagor of his debt, would, under the circumstances of this case, generate the usual presumption that the mortgage debt has been paid, and so extinguish the claim and title of the mortgagee. That such a presumption arises in ordinary cases is well settled. Goodwyn v. Baldwin, 59 Ala. 127; Ohmer v. Boyer, 89 Ala. 273,

7 South. 663; Bailey v. Butler, 138 Ala. 153, 35 South. 111; Gay v. Fleming, 182 Ala. 511, 62 South. 525; Shockley v. Christopher, 180 Ala. 140, 60 South. 317. It will be found, however, that in all of the cases where the rule has been applied to mortgages the mortgagor had remained in the exclusive possession of the mortgaged property. I believe it has never been applied against a mortgagee who was during the prescriptive period in the occupation and enjoyment of the property.

"It has been decided that, in the hands of a mortgagee in possession, a mortgage never becomes barred by lapse of time in the sense that the mortgagor can, in a court of equity, quiet his title against the mortgage without first doing equity by paying it. And this view is consonant with reason, and is supported by all the decisions which have directly involved the question, as well as those holding generally that a mortgagee in possession cannot be dispossessed until the mortgage debt is satisfied. Time can never run against the mortgagee in such a case, because he is in the 'actual possession of all the law gives him, and the possession itself is prima facie evidence that the money is not paid." 19 R. C. L. 462, § 248, and cases cited.

In the instant case the presumptions which ordinarily arise against a mortgagee not in possession can have no legitimate field of operation as against the wife, who was, jointly with her mortgagor husband, occupying the land. There was no occasion for diligence on her part, nor could diligence have changed possessory conditions to her advantage as mortgagee. As observed by the Supreme Court of California:

"All necessity for vigilance between husband and wife in guarding their property rights, should be, as far as may be, avoided." Mauldin v. Cox, 67 Cal. 387, 7 Pac. 804.

The case is, as it seems to me, highly exceptional in its character and circumstances, and demands exceptional treatment. And even if it be conceded that the wife's occupation of the land after the law day of the mortgage was in no sense possessory in its nature, I think that the ordinary presumption of payment of the mortgage debt is sufficiently rebutted in view of the patent fact that her inaction was due to consideration of conjugal fealty, family integrity, and social custom, which laid an effective ban upon the assertion of her rights as mortgagee.

Whether the rights of her heirs under the mortgage have been lost since her decease in 1908, is a question which need not be now considered.

### On Rehearing.

PER CURIAM. A majority of the court adhere to the conclusion reached on the original hearing that the title to the Autauga farm was in W. A. Graham, Sr., at the time of Mrs. Graham's death in 1908, and that his grantees now have the title thereto. With respect to that aspect of the bill which seeks to charge the respondents Peter H. and William A. Graham, Jr., with an indebtedness to their mother, Mrs. Graham, on account of advancements, it is now held that the evidence fails to establish such indebtedness, and the decree of the trial court is reversed in that particular, and the relief sought is denied.

[2] It is now held, also, by the entire court, upon the authorities cited in the dissenting opinion of SOMERVILLE, J., in paragraph 17 thereof, that the rents due on the Montgomery farm, for the year 1917, must be apportioned between the rent assignees of William A. Graham, Sr., and the heirs of Mrs. Graham, as specified in said dissenting opinion. In this respect, also, the decree of the trial court will be reversed, and a decree is now rendered accordingly.

In other respects the decree of the trial court will stand affirmed.

ANDERSON, C. J., and SAYRE, GARDNER, and MILLER, JJ., concur.

McCLELLAN and SOMERVILLE, JJ., dissent, as shown by their respective opinions on file.